ALICE M. BATCHELDER, Circuit Judge.
*390 Federal law imposes longer prison sentences on certain violent career criminals. As relevant here, both the Armed Career Criminal Act ("ACCA") and the United States Sentencing Guidelines ("Guidelines") impose longer prison sentences on certain defendants who have a criminal record containing multiple previous violent felonies. See 18 U.S.C. § 924(e)(1), (e)(2)(B) ; USSG §§ 4B1.1, 4B1.2(a)(1). And both contain an identical so-called "elements clause" describing certain eligible violent-felony predicates: felonies that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) ; USSG § 4B1.2(a)(1).
The question in this case is whether convictions of Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA and Guidelines elements clauses. In 2012, a panel of this court held that both Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA elements clause. See United States v. Anderson , 695 F.3d 390, 399-402 (6th Cir. 2012). That conclusion was disputed then, see id. at 406 (White, J., concurring), and has been disputed since, see, e.g. , Williams v. United States , 875 F.3d 803, 809 (6th Cir. 2017), reh'g en banc granted, vacated by , 882 F.3d 1169 (6th Cir. 2018) (Moore, J., concurring) ("we ought to reconsider Anderson en banc"); id. at 810 (Merritt, J., dissenting) ("the Anderson court did not follow the analytical procedure or reasoning process now established by the Supreme Court"). Still, subsequent panels of this court have considered themselves bound by Anderson . See id. at 805 (majority opinion). Among those was the panel in this case, which held that Ohio felonious assault qualifies as a violent-felony predicate under the Guidelines elements clause. See United States v. Burris , No. 16-3855, 2017 WL 6368852, at *2 (6th Cir. Dec. 13, 2017), reh'g en banc granted, vacated by , Order (6th Cir. Feb. 26, 2018) (No. 16-3855); accord United States v. Hibbit , 514 F. App'x 594, 597 (6th Cir. 2013).
We granted en banc review to examine whether Anderson still binds this court. We first conclude that Ohio felonious assault and Ohio aggravated assault are too *391 broad to always (or categorically) qualify as violent-felony predicates-they each criminalize more conduct than is described in the ACCA and Guidelines elements clauses. We next conclude that both Ohio's felonious-assault and aggravated-assault statutes are divisible-they each set out two separate crimes, one of which qualifies as a violent-felony predicate under the ACCA and the Guidelines and the other which does not. Because the Anderson court did not conduct an overbreadth analysis, and because subsequent Supreme Court precedent requires a divisibility analysis that Anderson lacks, we conclude that Anderson no longer binds this court. Still, based on the facts in this case and the applicable standard of review, we conclude that Burris is not eligible for relief. We AFFIRM the judgment of the district court.
I.
Le'Ardrus Burris was charged with one count of conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C), 846 ; one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ; and two counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) and (d)(1). A jury found Burris guilty on all counts.
Burris had a criminal record containing two previous Ohio felony convictions: a 2005 conviction for complicity in trafficking in drugs, in violation of Ohio Revised Code §§ 2923.02, 2925.03 ; and a 2007 conviction for felonious assault, in violation of Ohio Revised Code § 2903.11(A)(2). See Burris , 2017 WL 6368852, at *1, 2. The district court relied on these felonies to sentence Burris as a career offender under the Guidelines. Id. at *1 ; see USSG §§ 4B1.1, 4B1.2(a)(1). Burris objected to the career-offender classification, arguing that it overstated his actual criminal history, but Burris did not argue that his Ohio felonies were not violent-felony predicates under the Guidelines. See Burris , 2017 WL 6368852, at *1. The district court ultimately granted Burris a significant downward variance from the applicable 210-to-262-month Guidelines range, sentencing him to 90 months' imprisonment. See id.
On appeal, Burris argued that neither of his Ohio felonies qualified as violent-felony predicates under the Guidelines. See id. at *1-2. The panel rejected both arguments. See id. In rejecting Burris's argument regarding his Ohio felonious-assault conviction, the panel relied on Anderson and another recent Sixth Circuit case, Williams , 875 F.3d at 805-06. See Burris , 2017 WL 6368852, at *2 (" Anderson and Williams are binding precedent that resolve this issue."). We subsequently granted en banc review in Williams and in this case.
II.
This area of federal sentencing law is complicated. Members of the Supreme Court have described aspects of it as a "time-consuming legal tangle," Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2264, 195 L.Ed.2d 604 (2016) (Breyer, J., dissenting), and as a "mess," id. at 2269 (Alito, J., dissenting). Before turning to the merits of Burris's arguments, therefore, we begin by describing (1) the operation of the ACCA and the Guidelines, (2) Ohio's felonious assault and aggravated assault statutes, and (3) our cases interpreting those statutes in the ACCA and Guidelines context.
A.
The ACCA imposes a fifteen-year mandatory-minimum prison sentence on *392 persons who violate 18 U.S.C. § 922(g), the federal felon-in-possession-of-a-firearm statute, and who have three previous state or federal convictions for "violent felon[ies] or serious drug offense[s]." See 18 U.S.C. § 924(e)(1). A "violent felony" is a felony that, as relevant here, "has as an element the use, attempted use, or threatened use of physical force[1] against the person of another." Id. § 924(e)(2)(B)(i). This clause is commonly called the ACCA "elements clause." See, e.g. , United States v. Patterson , 853 F.3d 298, 302 (6th Cir. 2017). Similarly, the Guidelines advise enhanced sentences for "career offenders," adults who commit a "felony that is either a crime of violence or a controlled substance offense" and who have "at least two prior felony convictions of either a crime or violence or a controlled substance." See USSG § 4B1.1(a). A "crime of violence" is a felony that, as relevant here, "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 4B1.2(a)(1). This clause is commonly called the Guidelines "elements clause." See, e.g. , United States v. Harris , 853 F.3d 318, 320 (6th Cir. 2017). Because the text of the ACCA and Guidelines elements clauses are identical, we typically interpret both elements clauses "the same way." See id.
Since 1990, the Supreme Court has instructed federal sentencing courts to use the "categorical approach" to determine whether a defendant's previous state or federal felony convictions "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." See Descamps v. United States , 570 U.S. 254, 260-61, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013) (citing Taylor v. United States , 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ) (" Taylor adopted a 'formal categorical approach' " in the ACCA context); see also United States v. Ford , 560 F.3d 420, 421-22 (6th Cir. 2009) (citing Taylor , 495 U.S. at 602, 110 S.Ct. 2143 ) ("we apply a 'categorical' approach" in the Guidelines context). The categorical approach prohibits federal sentencing courts from looking at the particular facts of the defendant's previous state or federal felony convictions; rather, federal sentencing courts "may 'look only to the statutory definitions'-i.e. , the elements-of a defendant's prior offenses." Descamps , 570 U.S. at 261, 133 S.Ct. 2276 (quoting Taylor , 495 U.S. at 600, 110 S.Ct. 2143 ). The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony must have used, attempted to use, or threatened to use physical force against the person of another in order to have been convicted , not whether the particular defendant actually used, attempted to use, or threatened to use physical force against the person of another in that particular case . See generally Mathis , 136 S.Ct. at 2249 ; see Harris , 853 F.3d at 320. If the answer to that question is "no," and the statute forming the basis for the defendant's previous state or federal felony conviction criminalizes conduct that does not involve "the use, attempted use, or threatened use of physical force against the person of another," then a conviction under that statute may not serve as a violent-felony predicate under the elements clause, assuming that statute is an " 'indivisible' statute-i.e. , one not containing alternative elements." See Descamps , 570 U.S. at 258, 133 S.Ct. 2276. Importantly, this has been true since at *393 least 1990. See Taylor , 495 U.S. at 600-02, 110 S.Ct. 2143.
Some state and federal criminal statutes, however, are "divisible" statutes-i.e. , ones which "set[ ] out one or more elements of the offense in the alternative," "thereby defin[ing] multiple crimes." Descamps , 570 U.S. at 257, 133 S.Ct. 2276 ; Mathis , 136 S.Ct. at 2249. Legislatures sometimes enact divisible statutes "to create two different offenses, one more serious than the other." Mathis , 136 S.Ct. at 2249. If at least one of the statute's alternative sets of elements categorically matches the ACCA or Guidelines elements clauses and at least one of the sets of elements does not, the "modified categorical approach" allows sentencing courts "to consult a limited class of documents ... to determine which alternative formed the basis of the defendant's prior conviction." Descamps , 570 U.S. at 257, 133 S.Ct. 2276. This limited class of documents-so-called " Shepard documents"-includes "the indictment, jury instructions, or plea agreement and colloquy." Mathis , 136 S.Ct. at 2249. Once the federal sentencing court has determined under which alternative set of elements the defendant was convicted, it may then "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case)" with the ACCA or Guidelines elements clause. Descamps , 570 U.S. at 257, 133 S.Ct. 2276 ; Mathis , 136 S.Ct. at 2249. But the modified categorical approach applies only to statutes that list multiple alternative sets of elements , not statutes that list multiple alternative factual means of committing a single element. See Mathis , 136 S.Ct. at 2249.
When faced with a state or federal statute in the elements-clause context, therefore, we must conduct two analyses. One is an overbreadth analysis to determine whether the statute in question is too broad to categorically qualify as a violent-felony predicate because it criminalizes more conduct than is described in the ACCA and Guidelines elements clauses. The other is a divisibility analysis to determine whether the statute in question is divisible because it sets out multiple separate crimes and if so, whether any of those separate crimes qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses.
B.
The relevant portions[2] of Ohio's felonious-assault and aggravated-assault statutes create nearly identical crimes, except that Ohio aggravated assault includes a mitigating element of provocation. See State v. Deem , 40 Ohio St.3d 205, 533 N.E.2d 294, 299 (1988). Ohio felonious assault is a second-degree felony unless the victim is a law-enforcement officer, in which case it is a first-degree felony; Ohio aggravated assault is a fourth-degree felony. See Ohio Rev. Code §§ 2903.11(D)(1)(a), 2903.12(B).
The relevant portion of Ohio's felonious-assault statute is as follows:
Ohio Revised Code § 2903.11 -Felonious Assault
(A) No person shall knowingly do either of the following:
(1) Cause serious physical harm to another or to another's unborn;
(2) Cause or attempt to cause physical harm to another or to another's unborn *394 by means of a deadly weapon or dangerous ordnance.
...
(E) As used in this section:
(1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.
The relevant portion of Ohio's aggravated-assault statute is as follows:
Ohio Revised Code § 2903.12 -Aggravated Assault
(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another or to another's unborn;
(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Importantly, the Ohio Revised Code also contains statutory definitions for "physical harm" and "serious physical harm," as used in Ohio's felonious-assault and aggravated-assault statutes. These definitions are not cross-referenced from either of those statutes, though, and that has caused difficulty in some of our prior cases, including the Anderson case. These definitions are as follows:
Ohio Revised Code § 2901.01 -Definitions
(A) As used in the Revised Code:
...
(3) "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration.
...
(5) "Serious physical harm to persons" means any of the following:
(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
In 2012, a divided panel of this court held that both Ohio felonious assault and Ohio aggravated assault qualify as violent-felony predicates under the ACCA elements clause. See Anderson , 695 F.3d at 399-402. The panel correctly noted that it was required to apply the categorical approach to determine whether convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as violent felonies. See id. at 399. The panel also noted that "[i]f it is possible to violate the statute in a way that would constitute a violent felony and in a way that would not, a 'court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction.' " Id. (quoting United States v. Gibbs , 626 F.3d 344, 352 (6th Cir. 2010) ); see Shepard v. United States , 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The panel then analyzed Ohio's aggravated-assault statute, and found that it qualified as a *395 violent-felony predicate under the ACCA elements clause because:
We think it clear that the Ohio aggravated assault statute, which requires proof of "serious physical harm" or "physical harm ... by means of a deadly weapon or dangerous ordnance," Ohio Rev. Code § 2903.12(A)(1)-(2), necessarily requires proof that the defendant used "force capable of causing physical pain or injury." [quoting Johnson v. United States , 559 U.S. 133, 140 [130 S.Ct. 1265, 176 L.Ed.2d 1] (2010) (" Johnson I ").] We hold that one can "knowingly ... [c]ause serious physical harm to another," Ohio Rev. Code § 2903.12(A)(1), only by knowingly using force capable of causing physical pain or injury, i.e. , violent physical force, in the context of determining what crime constitutes a "violent felony" under § 924(e)(2)(B)(i).... In sum, because the Ohio aggravated assault statute requires the state to show the defendant either knowingly caused serious physical harm to another or knowingly caused physical harm to another by means of a deadly weapon or ordnance, a conviction under that statute is a "violent felony" under § 924(e)(2)(B)(i).
Anderson , 695 F.3d at 400-01 (footnote omitted). The panel then went on to analyze Ohio's felonious-assault statute, concluding that convictions under subsection (A) of that statute also qualified as violent felonies under the ACCA elements clause, for all of the same reasons. See id. at 402. Judge White did not join that portion of the opinion, and wrote separately to explain that she did not agree that convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as violent felonies under the ACCA elements clause; rather, she thought that they qualified only under the ACCA residual clause.[3] See id. at 403-06 (White, J., concurring).
As we earlier noted, subsequent panels of this court have regularly applied Anderson 's holding in the Guidelines context, finding that convictions under Ohio's felonious-assault and aggravated-assault statutes qualified as crimes of violence under the Guidelines as well. See, e.g. , Hibbit , 514 F. App'x at 597 ; Burris , 2017 WL 6368852, at *2. And despite dissatisfaction with Anderson 's holding in 2012, and growing dissatisfaction since then as the Supreme Court clearly laid out the operation of the categorical approach in cases such as Descamps and Mathis , see, e.g. , Williams , 875 F.3d at 809 (Moore, J., concurring); id. at 810 (Merritt, J., dissenting), panels have continued to consider themselves bound by Anderson , see id. at 805 (majority opinion).
III.
Burris argued that Anderson is wrong and should be overruled, for two reasons. He first pointed out that even if Ohio's felonious assault and aggravated assault statutes might appear on their faces to categorically require some form of physical harm, the Ohio Revised Code in fact defines "serious physical harm" to include some forms of serious mental harm. See Ohio Rev. Code § 2901.01(A)(5)(a). In failing to discuss this statutory definition, the Anderson panel "failed to recognize that the statute is overbroad." Burris also pointed out that the Supreme Court issued Descamps and Mathis after the Anderson decision, and those two Supreme Court cases "clarified how to apply the categorical approach when determining whether a statute is divisible and how to apply the modified categorical approach if a statute *396 is divisible." "Without the benefit of Descamps and Mathis ," Burris argued, "the Anderson panel did not properly analyze Ohio's felonious assault statute."
To obtain relief, Burris faces some obstacles. As the government pointed out in its supplemental briefing,[4] Burris failed to argue to the district court that his Ohio felonies were not violent-felony predicates under the Guidelines. See Burris , 2017 WL 6368852, at *1. We may therefore grant Burris relief only if he satisfies the plain-error standard. See United States v. Olano , 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This requires, in part, that Burris show that any error in his case "affects [his] substantial rights." See id. ; Fed. R. Crim. Proc. 52(b). But as the government has shown,[5] the Shepard documents in this case indicate that Burris was convicted of the (A)(2) variant of Ohio felonious assault, and not the potentially problematic (A)(1) variant. Any error in treating Burris's Ohio felonious-assault conviction could affect Burris's substantial rights only if (1) at least some part of the Ohio felonious-assault statute is too broad to categorically qualify as a crime of violence under any then-valid Guidelines career-offender clause (the enumerated-offense clause, the residual clause, or the elements clause) because it criminalizes knowingly causing certain forms of serious mental harms; and (2) the Ohio felonious-assault statute is indivisible and sets forth two factual means of committing Ohio felonious assault rather than two alternative sets of elements . Even if both of these are true, and Burris is able to thereby show that there is an error in his case which affects his substantial rights, Burris must also demonstrate that the error is "plain" and that the plain error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano , 507 U.S. at 732, 113 S.Ct. 1770 (citation omitted); Fed. R. Crim. Proc. 52(b). He cannot do so. We explain why below.
A.
We begin by determining whether at least some part of Ohio's felonious-assault and aggravated-assault statutes is too broad to categorically qualify as a crime of violence under any Guidelines career-offender clause that was in place at the time that the district court sentenced Burris.[6] In addition to the Guidelines elements clause, there are two other Guidelines career-offender *397 clauses under which an Ohio felonious-assault conviction might qualify as a crime of violence: the enumerated-offense clause (which includes "aggravated assault")[7] and the residual clause (felonies that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another"). See USSG § 4B1.2 Application Note 1, (a)(2) (2015).
Each of these three Guidelines clauses focuses on "crime[s] of violence"-crimes resulting in "physical" harms. The elements clause sweeps in felonies that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1) (2015). The enumerated offense of aggravated assault, under our precedent, is met when a person:
(a) attempts to cause serious bodily injury[8] to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury[9] to another with a deadly weapon.
United States v. McFalls , 592 F.3d 707, 717 (6th Cir. 2010) (quoting Model Penal Code § 211.1(2) ), abrogated on other ground by United States v. Verwiebe , 874 F.3d 258, 262 (6th Cir. 2017). And the residual clause swept[10] in felonies that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2) (2015).
Both Ohio's felonious-assault and aggravated-assault statutes criminalize, among other things, "knowingly ... [c]aus[ing] serious physical harm to another...." See Ohio Rev. Code §§ 2903.11(A)(1), 2903.12(A)(1). But "[s]erious physical harm" includes "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." Id. § 2901.01(A)(5)(a). On their faces, then, both statutes appear to criminalize more conduct than is described in each of the Guidelines clauses-a person can at least theoretically knowingly cause certain serious mental harms without using, attempting to use, or threatening to use physical force against the person of another, see 18 U.S.C. § 924(e)(2)(B)(i) ;
*398 USSG § 4B1.2(a)(1), or without causing bodily injury or without engaging in conduct that presents a serious potential risk of physical injury to another, see McFalls , 592 F.3d at 717 ; USSG § 4B1.2(a)(2) (2015). The Supreme Court has cautioned us, however, not to "apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the conduct described in the elements clauses. See Moncrieffe v. Holder , 569 U.S. 184, 191, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) (internal quotation marks and citation omitted); United States v. Southers , 866 F.3d 364, 368 (6th Cir. 2017) (" Moncrieffe and its 'realistic probability' inquiry applies in the ACCA context."). We therefore look to state law to determine whether there is a realistic probability that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the Guidelines career-offender clauses. In doing so, we are bound by the Ohio Supreme Court's interpretation of its criminal law. See Southers , 866 F.3d at 368. "[A]fter a state supreme court's decisions, 'intermediate state appellate court decisions constitute the next best indicia of what state law is.' " Id. (quoting United States v. Gardner , 823 F.3d 793, 803 (4th Cir. 2016) (alteration omitted) ).
The Ohio Supreme Court has described the purpose of both versions of Ohio aggravated assault. They "serve the same purpose-preventing physical harm to persons." State v. Brown , 119 Ohio St.3d 447, 895 N.E.2d 149, 150-51 (2008). But we are aware of no Ohio Supreme Court cases that purport to limit Ohio's statutory definition of "serious physical harm" to only physical harms. We therefore turn to Ohio's intermediate appellate court decisions to determine whether there is a realistic probability that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the Guidelines career-offender clauses.
These decisions confirm that there is such a realistic probability. Burris cites two cases that confirm this, and the government cites an additional case. The first, State v. Elliott , involved a man who was convicted of Ohio felonious assault after he killed his wife and then allowed his six-year-old son to discover her lying dead in a pool of her own blood. 104 Ohio App.3d 812, 663 N.E.2d 412, 413 (1995). The son suffered post-traumatic stress disorder ("PTSD") as a result. Id. at 415-16. In Elliott , the Ohio intermediate appellate court found that liability for violating Ohio's felonious-assault statute extends to a defendant's "failure to act" to prevent serious physical harm to a victim when the defendant has a legal duty to do so. Id. at 415. As relevant in Elliott , "parents and guardians have a legal duty to protect their children from harm," and the father did not act to prevent his son's discovery of the son's dead mother. Id.
The second, State v. Cooper , involved a mother who was involved in sexually abusing and/or allowing others to sexually abuse her four children. 139 Ohio App.3d 149, 743 N.E.2d 427, 431 (2000). Although the details of the mother's involvement are not clear for each of the four children, we know that the mother held down one of her daughters to allow her boyfriend to rape the daughter, digitally raped that daughter herself by placing her fingers in her daughter's vagina, and placed her hand on the penis of one of her sons. Id. The children each displayed "a variety of symptoms of mental illness." Id. The mother was charged with committing felonious assault against each of her four children "by means of many acts and omissions, including her assistance in the rapes and *399 sexual abuse and her failure to protect each child from physical and sexual abuse over his or her lifetime." Id. at 431-32. In Cooper , the Ohio intermediate appellate court found that liability for violating Ohio's felonious-assault statute extends to a defendant's series of acts and failures to act which, taken together, cause serious physical harm to the victims (rather than a single act or failure to act, as in Elliott ). See id. at 433-35.
The third, State v. Hodges , involved an Episcopal priest who counseled a parishioner, who had a history of psychiatric illnesses, about her sexually abusive husband. 107 Ohio App.3d 578, 669 N.E.2d 256, 258 (1995). The priest began hugging and kissing her during counseling sessions, then groped her, and eventually engaged in oral sex and sexual intercourse with her, despite her telling him, "No, this is wrong." Id. at 258-59, 261. There is no indication in Hodges that the priest used any physical force in any these encounters. The parishioner, however, later carved "repent" into her arm with a razor blade, "apparently in response to her sexual encounter with defendant," and was hospitalized in a psychiatric unit. Id. at 259, 261. In Hodges , the Ohio intermediate appellate court rejected the priest's argument that he was entitled to a judgment of acquittal on his felonious-assault charge, holding that reasonable minds could conclude that the priest knowingly caused serious physical harm to the parishioner. Id. at 261.
These cases confirm that there is at least a "realistic probability" that a person may be convicted of Ohio felonious assault or Ohio aggravated assault[11] after knowingly causing "serious physical harm" in the form of certain serious mental harms without using physical force, as defined in the ACCA and the Guidelines. "[P]hysical force," as used here, means "violent force-that is, force capable of causing physical pain or injury to another person." Johnson I , 559 U.S. at 140, 130 S.Ct. 1265. The father in Elliott did not have any physical contact with his son, but was convicted of feloniously assaulting him. See Elliott , 663 N.E.2d at 413. There is no indication that the mother in Cooper had physical contact with two of the four children she was convicted of feloniously assaulting; and there is no allegation that the physical contact she had with her other two children constituted "physical force" as Johnson I describes it. See Cooper , 743 N.E.2d at 431. Similarly, there is no indication that any of the physical contact the priest in Hodges had with his parishioner constituted "physical force." See Hodges , 669 N.E.2d at 258-59. The fairest reading of these cases is that defendants in Ohio may be convicted of felonious assault or aggravated assault without any "physical force" whatsoever (or threat of such force, or the attempted use of such force), so long as those defendants knowingly cause (by whatever means) the serious mental harms included in Ohio's statutory definition of "serious physical harm." Ohio's felonious-assault and aggravated-assault statutes are therefore too broad to categorically qualify as violent-felony predicates under the ACCA and Guidelines elements clauses.
Defendants in Ohio may also be convicted of felonious assault or aggravated assault without, as is required by the Guidelines enumerated-offense clause,[12] *400 causing any form of "bodily injury"-"physical pain, illness or any impairment of physical condition"-much less "serious bodily injury." See Model Penal Code § 210.0[13] ; McFalls , 592 F.3d at 717. In Elliott and Cooper , at least,[14] there is no indication that the victims suffered bodily injury as defined in the Model Penal Code, and it is clear in both that the jury punished the defendants for mental harms suffered by the victims, not bodily ones. See Elliott , 663 N.E.2d at 413, 415 ; Cooper , 743 N.E.2d at 431, 433-35. Ohio's felonious-assault and aggravated-assault are therefore too broad to categorically qualify as violent-felony predicates under the Guidelines enumerated-offense clause.[15]
Defendants in Ohio may also be convicted of felonious assault or aggravated assault without, as is required by the Guidelines residual clause, engaging in conduct that presents a serious potential risk of physical injury to another. See USSG § 4B1.2(a)(2) (2015). In Elliott and Cooper , at least, the defendants engaged in conduct that Ohio juries thought could fairly be described as presenting a serious potential risk of mental injury to another, but we do not think that that conduct could fairly be described as presenting a serious potential risk of physical injury to another, and it is clear in both that the jury punished the defendants for engaging in conduct that presented a serious risk of mental injury, not physical injury. See Elliott , 663 N.E.2d at 413, 415 ; Cooper , 743 N.E.2d at 431, 433-35. Ohio's felonious-assault and aggravated-assault are therefore too broad to categorically qualify as violent-felony predicates under the Guidelines residual clause.[16]
*401 The government argues that we should not allow "a few (potentially) outlier lower court decisions" to "excuse thousands of violent career criminals" from the consequences imposed by the ACCA and the Guidelines. In support of this position, the government quotes Perez v. United States , 885 F.3d 984, 990 (6th Cir. 2018), in which a panel of this court accepted a similar argument and found that New York's second-degree robbery qualified as a violent felony under the ACCA elements clause despite several New York intermediate appellate court cases in which defendants were convicted without using "force capable of causing physical pain or injury to another person." Id. at 989-90 (quoting Johnson I , 559 U.S. at 140, 130 S.Ct. 1265 ) ). But in Perez , the panel interpreted a more-recent decision by New York's highest court to require at least "a threshold level of force," see id. at 988 (citing People v. Jurgins , 26 N.Y.3d 607, 26 N.Y.S.3d 495, 46 N.E.3d 1048, 1053 (2015) ), and found that "[t]he New York courts by and large have construed the statute to ... include force that would cause pain to another," id. Here, by contrast, there is no such opinion from Ohio's highest court that appears to limit Ohio's statutory definition of "serious physical harm" in such a way that convictions of Ohio felonious assault and Ohio aggravated assault may categorically qualify as violent-felony predicates under the ACCA and Guidelines elements clauses. We therefore reject the government's broad interpretation of Perez as inconsistent with the Supreme Court's categorical-approach jurisprudence. Some might think that Congress intended to impose enhanced prison sentences under the ACCA and the Guidelines on the basis of state or federal felony convictions that almost always, but do not quite always, involve the use, attempted use, or threatened use of physical force against the person of another. See generally Mathis , 136 S.Ct. at 2268 (Alito, J., dissenting) (lamenting that the Supreme Court's categorical-approach jurisprudence would result in "all burglary convictions in a great many States" being disqualified as ACCA-predicates even though "Congress indisputably wanted burglary to count under ACCA"). But we are a lower court, and we must follow the Supreme Court's categorical-approach jurisprudence here. That jurisprudence requires Burris only to point to "cases in which the state courts in fact did apply the statute" to conduct falling outside the conduct described in the ACCA and Guidelines elements clauses, and that is enough to establish a "realistic probability" that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another. Gonzales v. Duenas-Alvarez , 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) ; see Moncrieffe , 569 U.S. at 191, 133 S.Ct. 1678 (quoting Duenas-Alvarez , 549 U.S. at 193, 127 S.Ct. 815 ); Southers , 866 F.3d at 368 (" Moncrieffe and its 'realistic probability' inquiry applies in the ACCA context."). Burris has pointed to those cases,[17] so Burris has established that Ohio's felonious-assault and aggravated-assault statutes are not a categorical match to the ACCA and Guidelines elements clauses. Unless those statutes are divisible, therefore, convictions under those statutes do not qualify as violent-felony predicates under the ACCA and Guidelines elements *402 clauses. See Descamps , 570 U.S. at 258, 133 S.Ct. 2276.
Anderson wrongly held that convictions under Ohio's felonious-assault and aggravated-assault statutes categorically qualify as violent-felony predicates. See Anderson , 695 F.3d at 399-402. The Anderson panel apparently did so because it analyzed only the ordinary meaning of "serious physical harm" rather than Ohio's statutory definition for "serious physical harm." But because that statutory definition includes certain serious mental harms, and because state courts in fact do apply the statute to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another-and did at the time Anderson was decided; Elliott , Cooper , and Hodges were all decided before Anderson -Burris is correct that Anderson was wrongly decided and should be overruled on that basis.
B.
We next determine whether Ohio's felonious-assault and aggravated-assault statutes are divisible because they set out multiple separate crimes and if so, whether either of those separate crimes qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses.
Supreme Court cases decided after Anderson make clear that, if a statute is too broad to qualify categorically as a violent-felony predicate under the ACCA and Guidelines elements clauses, we should next look at whether that statute is "divisible." "[D]ivisible" statutes, as a reminder, are statutes which "set[ ] out one or more elements of the offense in the alternative," "thereby defin[ing] multiple crimes." Descamps , 570 U.S. at 257, 133 S.Ct. 2276 ; Mathis , 136 S.Ct. at 2249.
The Supreme Court in Mathis described several ways to determine whether a state statute is divisible, each of which is based in state law. There may be "a state court decision" that "definitively answers the question." Mathis , 136 S.Ct. at 2256. Or "the statute on its face may resolve the issue." Id. Specifically, "[i]f statutory alternatives carry different punishments, then under Apprendi they must be elements." Id. And some statutes even "identify which things must be charged (and so are elements) and which need not be (and so are means.)" Id. But "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission," and is not divisible. Id.
Where state law is unclear on whether a state statute is divisible, we may "peek at the record documents" for "the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 2256-57 (alterations and citation omitted). If the indictment and jury instructions use all the terms from a state law, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." Id. at 2257. But the indictment and jury instructions conversely might "indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime," and not merely a list of factual means by which a person might satisfy a single element. Id.
Where both state law and the record documents are unclear, "a sentencing judge will not be able to satisfy ' Taylor 's demand for certainty' when determining whether a defendant was convicted of a" qualifying predicate offense. Id.
We have not before definitively answered the question of whether Ohio's felonious-assault and aggravated-assault *403 statutes are divisible. Anderson did not address this question, at least regarding subsections (A)(1) and (A)(2) of each statute. See Anderson , 695 F.3d at 399-402. Since Anderson , we seem to have treated the Ohio felonious-assault statute both as divisible, see Miller v. United States , 561 F. App'x 485, 492 (6th Cir. 2014) ( Ohio Revised Code § 2903.11"is a divisible statute"); United States v. Denson , 728 F.3d 603, 613 (6th Cir. 2013) (listing subsections (A)(1) and (A)(2) as separate offenses), and as indivisible, see Person v. Sheets , 527 F. App'x 419, 424 & n.4 (6th Cir. 2013) ("the subdivisions 'set forth two means of committing the same offense' " (quoting Brown , 895 N.E.2d at 156 ) ).
Turning to Ohio state law, then, each of the three ways Mathis describes to determine whether a statute is divisible points in the same direction: Ohio's felonious-assault and aggravated-assault statutes are both divisible, for the following reasons.
The first way Mathis describes to determine whether a statute is divisible is to look to see if "a state court decision" "definitively answers the question." Mathis , 136 S.Ct. at 2256. We are aware of no state court decision that does so. But we note that, as relevant here, the regular practice in Ohio state courts appears to involve charging defendants with only one subsection of Ohio's felonious-assault and aggravated-assault statutes, or of charging defendants with separate counts of Ohio aggravated assault or Ohio felonious assault under both subsections of the relevant statute. This regular practice indicates that Ohio state courts view Ohio's felonious-assault and aggravated-assault statutes as divisible, setting out different crimes and not merely different factual means of accomplishing the same crime.
It is true that in Brown , the Ohio Supreme Court describes subsections (A)(1) and (A)(2) as "set[ting] forth two means of committing the same offense." 895 N.E.2d at 156. It is this language on which the panel in Person relied when treating Ohio's felonious-assault statute as indivisible. See Person , 527 F. App'x at 424 & n.4. But the Ohio Supreme Court in Brown and the panel in Person were dealing with double-jeopardy issues, and a deeper dive into Brown reveals that it does not definitively answer the question of whether Ohio's felonious-assault and aggravated-assault statutes are divisible for ACCA and Guidelines purposes. In Brown , the Ohio Supreme Court was determining whether aggravated assault under subsection (A)(1) and aggravated assault under subsection (A)(2) are "allied offenses of similar import" under Ohio Revised Code § 2941.25, "a legislative attempt to codify the judicial doctrine of merger," which precludes cumulative punishments for the same conduct. 895 N.E.2d at 156-57. The defendant in Brown had been charged with, and ultimately convicted of, one count of aggravated assault under subsection (A)(1) and one count of aggravated assault under subsection (A)(2). See id. at 154. "[E]ach conviction" arose from a single stabbing wound that the defendant inflicted on the victim. Id. The Ohio Supreme Court ultimately concluded that these two convictions could result in only one punishment under Ohio Revised Code § 2941.25 because "the General Assembly did not intend violations [of both subsections] to be separately punishable when the offenses result from a single act undertaken with a single animus." Id. at 156.[18]
*404 In so holding, however, the Ohio Supreme Court did not prohibit prosecutors from charging a defendant with violating both subsections of a statute such as Ohio's felonious-assault and aggravated-assault statutes where the defendant either committed the crimes separately or had a separate animus for each violation. See id. at 153-54. Nor did it prohibit prosecutors from charging a defendant with violating only a single subsection of a statute such as Ohio's felonious-assault and aggravated-assault statutes. See id. at 456, 895 N.E.2d 149 ("[t]he choice is given to the prosecution to pursue one offense or the other"). And a survey of recent Ohio intermediate appellate court decisions shows that persons are regularly charged under only one of the two subsections of Ohio's felonious-assault and aggravated-assault statutes or under both subsections of the relevant statute separately. See, e.g. , State v. Harwell , No. 27658, 2018 WL 2277772, at *1 (Ohio Ct. App. May 18, 2018) (defendant was charged with two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(2) and one count of felonious assault under Ohio Revised Code § 2903.11(A)(1) ); State v. Perez , No. WD-17-017, 2018 WL 2278169, at *1 (Ohio Ct. App. May 18, 2018) ("An indictment for felonious assault in violation of [ Ohio Revised Code §] 2903.11(A)(1)... was filed against appellant."); State v. Collins , No. 106050, 2018 WL 2149204, at *1 (Ohio Ct. App. May 10, 2018) (defendant was charged with two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(2) and two separate counts of felonious assault under Ohio Revised Code § 2903.11(A)(1) ); State v. Johnson , No. L-16-1282, 2018 WL 1989582, at *3 (Ohio Ct. App. Apr. 27. 2018) (grand jury "indicted Jawaun of ... felonious assault, in violation of [ Ohio Revised Code §] 2903.11(A)(2)").
We recognize that the stray language from the Ohio Supreme Court's opinion in Brown , taken out of context, could be viewed as indicating that Ohio's felonious-assault and aggravated-assault statutes are indivisible. But that case was about a wholly different issue, and we therefore will not permit it to outweigh the more-recent regular practice in the Ohio state courts.
The second way Mathis describes to determine whether a statute is divisible is to look to see if "the statute on its face [ ] resolve[s] the issue." Mathis , 136 S.Ct. at 2256. Each of these statutes on its face appears to be divisible. Each appears to set forth one or more elements of the offense in the alternative, thereby defining multiple crimes. See Descamps , 570 U.S. at 257, 133 S.Ct. 2276 ; Mathis , 136 S.Ct. at 2249. Using Ohio's felonious-assault statute as an example, Ohio Revised Code § 2903.11(A)(1) criminalizes (1) "knowingly" (2) "[c]aus[ing]" (3) "serious physical harm" (4) "to another or another's unborn." Ohio Revised Code § 2903.11(A)(2), by contrast, criminalizes (1) "knowingly" (2) "[c]aus[ing] or attempt[ing] to cause" (3) "physical harm" (4) "to another or another's unborn" (5) "by means of a deadly weapon or dangerous ordnance." These appear to be alternative elements, not alternative factual means of satisfying a single set of elements.
*405 The third, albeit related, way Mathis describes to determine whether a statute is divisible is to look to see "[i]f statutory alternatives carry different punishments," because if they do, "then under Apprendi[19] they must be elements." Mathis , 136 S.Ct. at 2256. Again using Ohio's felonious-assault statute as the example, Ohio Revised Code § 2903.11(D)(1)(a) increases the seriousness of felonious assault from a second-degree felony to a first-degree felony if the victim is a "peace officer," regardless of whether the defendant is convicted under subsection (A)(1) or subsection (A)(2). But Ohio Revised Code § 2903.11(D)(1)(b) imposes an additional mandatory prison term if the victim both is a "peace officer" and "suffer[s] serious physical harm." Accord Ohio Revised Code § 2903.12(B) (similarly imposing a mandatory prison term where the victim is a peace officer and suffers serious physical harm). A conviction under subsection (A)(1) of each statute, where the victim is a "peace officer," carries a different and greater punishment than does a conviction under subsection (A)(2) of each statute where the victim is a "peace officer." And, under Mathis , that means the subsections must be elements. 136 S.Ct. at 2256. In sum, Ohio's felonious-assault and aggravated-assault statutes are divisible; subsection (A)(1) and subsection (A)(2) of each statute set forth a separate crime. Having previously established that subsection (A)(1) is too broad to qualify as a violent-felony predicate, we now turn to examining subsection (A)(2).
C.
Subsection (A)(2) prohibits "[c]aus[ing] or attempt[ing] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance." O.R.C. § 2903.11(A)(2). Ohio statutorily defines a "[d]eadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." O.R.C. § 2923.11(A). "Physical harm" is defined by Ohio as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." O.R.C. § 2901.01(A)(3). Since the use of a "deadly weapon" or "dangerous ordinance" while "[c]aus[ing] or attempt[ing] to cause physical harm" is necessary for a conviction under subsection (A)(2), it follows logically that using a device "capable of inflicting death" satisfies the element clause's use, attempted use, or threatened use of violent physical force.
However, we need not even rely on logic and common sense because this court has already answered this question several times and come to the same conclusion. The Sixth Circuit has adopted, as have other circuits,[20] what is colloquially called the "deadly weapon rule" that is dispositive for this analysis unless applicable state law demands otherwise (here it does not): "When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause." Harris , F.3d at 321. It is worth noting that "the degree or threat of physical force" contemplated by the offense need be no greater than that of common law battery. Id . We find no basis in the statutory language or relevant case law to *406 distinguish between the "deadly weapon" and "dangerous ordinance."
Tellingly, Burris does not cite (nor can we find) a single instance of Ohio courts' applying subsection (A)(2) to conduct that does not qualify under the Guidelines elements clause. Given the statutory language, Ohio case law, and our own precedents, we find that a conviction under subsection (A)(2) qualifies as a violent-felony predicate under the Guidelines.
D.
The subsection (A)(1) version of each offense is too broad to qualify categorically as a violent-felony predicate under the ACCA and Guidelines elements clauses. Therefore, sentencing courts should employ the modified categorical approach to determine whether a defendant was convicted of the (A)(1) version of the offense or the (A)(2) version of the offense. If the defendant was convicted under the (A)(1) version of either offense, that offense does not qualify as a violent-felony conviction under the ACCA or Guidelines elements clauses.[21] If a defendant was convicted under the (A)(2) version of either offense, that offense does qualify as a violent-felony predicate under the ACCA and Guidelines elements clauses. Burris does not argue otherwise. And if the Shepard documents in a particular case do not make clear under which subsection of the relevant statute a defendant was convicted, sentencing courts must "presume that the conviction rested upon nothing more than the least of the acts criminalized," Moncrieffe , 569 U.S. at 190-91, 133 S.Ct. 1678, which means that the conviction does not qualify as a predicate under either the ACCA or the Guidelines elements clauses.
Anderson did not engage in this divisibility analysis, see Anderson , 695 F.3d at 399-402, probably because the Supreme Court opinions most clearly setting forth this required analysis, Descamps and Mathis , had not yet been decided. This divisibility analysis is nevertheless now clearly required under the Supreme Court's categorical-approach and modified-categorical-approach jurisprudence. Still, even after Descamps and Mathis , panels of this court have considered themselves bound by Anderson . See, e.g. , Williams , 875 F.3d at 805. After all, our longstanding rule is that "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." See Salmi v. Sec'y of Health and Human Servs. , 774 F.2d 685, 689 (6th Cir. 1985) (citation omitted).
We now hold that, for two reasons, Anderson is no longer binding law. First , Anderson was wrongly decided because it failed to recognize that Ohio's statutory definition of "serious physical harm" includes certain serious mental harms, and because state courts in fact do apply Ohio's felonious-assault and aggravated-assault statutes to conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another. Second , in the post- Anderson cases of Descamps and Mathis the Supreme Court has made it clear that federal sentencing courts must conduct a divisibility analysis, and the Anderson majority-albeit understandably-did not do so. With those mistakes now obvious, it is untenable to allow Anderson to continue both to require *407 the district courts in this circuit to enhance defendants' prison sentences based on criminal convictions that we know do not qualify under the ACCA and Guidelines elements clauses, and to require panels of this court to affirm those incorrectly enhanced sentences. Cf. Hicks v. United States , --- U.S. ----, 137 S.Ct. 2000, 2001, 198 L.Ed.2d 718 (2017) (Gorsuch, J., concurring) ("For who wouldn't hold a rightly diminished view of our courts if we allowed individuals to linger longer in prison than the law requires only because we were unwilling to correct our own obvious mistakes.").
Having concluded that (1) Ohio's felonious-assault and aggravated-assault statutes are too broad to qualify categorically as violent-felony predicates under the ACCA and Guidelines elements clauses, (2) that both statutes are divisible, and (3) that only the (A)(2) version of each statute qualifies as a violent-felony predicate under the ACCA and Guidelines elements clauses, we conclude the analysis. The Shepard documents in this case[22] make clear that Burris was sentenced for the (A)(2) version of Ohio felonious assault. Burris is therefore unable to show that any error in his case, even if it was plain or obvious or clear, affected his substantial rights.
IV.
For the foregoing reasons, we AFFIRM the judgment of the district court.
CONCURRENCE

"[P]hysical force," as used here, means "violent force-that is, force capable of causing physical pain or injury to another person." Johnson v. United States , 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ("Johnson I ").

Ohio's felonious-assault statute also criminalizes certain kinds of sexual conduct by persons with AIDS, see Ohio Rev. Code § 2903.11(B), but this portion of the statute is not at issue in this case. Each reference to convictions under Ohio's felonious-assault statute in this opinion refers only to subsection (A) convictions.

The Supreme Court has since found the ACCA residual clause to be unconstitutionally vague. See Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015) ("Johnson II ").

We note that the government failed to point out the appropriate standard of review in this case in its response to Burris's request for rehearing en banc. It would be helpful if the government pointed out vehicle problems such as these when it asks the en banc court to deny a request for rehearing en banc.

The government filed a motion asking us to take judicial notice of the Shepard documents in this case. The government argues that it had no reason to produce these documents earlier in the case, since Anderson and its progeny made clear that both (A)(1) and (A)(2) of Ohio's felonious-assault and aggravated-assault statutes satisfied the Guidelines elements clause. Now that Anderson 's holding is in jeopardy, the government argues that the Shepard documents are necessary to resolve this case. We may take judicial notice "at any stage of the proceeding" of "fact[s] that [are] not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(d), (b)(2). We have taken judicial notice of Shepard documents in similar circumstances before. See United States v. Adkins , 729 F.3d 559, 567 n.4 (6th Cir. 2013) ; United States v. Ferguson , 681 F.3d 826, 834-35 (6th Cir. 2012). For the reasons stated in those opinions, we GRANT the government's motion to take judicial notice.

We express no opinion as to the order in which these two issues should be addressed in other cases, noting only that in this case, addressing overbreadth first is the more useful approach.

"[A]ggravated assault" is now listed in the main text of the Guidelines enumerated-offense clause. See USSG § 4B1.2(a)(2). In the version of the Guidelines under which Burris was sentenced, however, "aggravated assault" was listed only in Application Note 1. See United States v. Rodriguez , 664 F.3d 1032, 1036 (6th Cir. 2011) ; USSG § 4B1.2 Application Note 1 (2015), available at https://www.ussc.gov/guidelines/2015-guidelines-manual/2015-chapter-4. Still, courts followed the application notes, and Rodriguez held that Ohio aggravated assault qualified as an enumerated crime of violence for purposes of the career-offender guidelines. See id. at 1036-37.

Serious bodily injury means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of any bodily member or organ." Model Penal Code § 210.0(3).

Bodily injury means "physical pain, illness or any impairment of physical condition." Model Penal Code § 210.0(2)

Although the Supreme Court struck down the identically worded ACCA residual clause as unconstitutionally void in Johnson II , 135 S.Ct. at 2563, it upheld the Guidelines residual clause against a void-for-vagueness challenge, see Beckles v. United States , --- U.S. ----, 137 S.Ct. 886, 890, 197 L.Ed.2d 145 (2017). The United States Sentencing Commission removed the residual clause from the Guidelines after Johnson II , but we "consider § 4B1.2(a) 'as it existed at the time of [Burris's] sentencing, giving effect to the residual clause." United States v. Jackson , 704 F. App'x 484, 487 (6th Cir. 2017) (quoting United States v. Tibbs , 685 F. App'x 456, 459-60 (6th Cir. 2017) ); accord Patterson , 853 F.3d at 305-06.

Although each of these was a felonious assault case, because the relevant elements are the same in both statutes, we assume the Ohio courts would interpret them in the same way.

The ACCA enumerated-offense clause does not contain "aggravated assault." See 18 U.S.C. § 924(e)(2)(B)(ii).

The Model Penal Code defines "bodily injury" as "physical pain, illness or any impairment of physical condition," and "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Model Penal Code § 210.0.

The defendant in Hodges was at least a but-for cause of "bodily injury," whether or not his conduct met the rest of elements of the generic aggravated-assault offense. See Hodges , 669 N.E.2d at 259, 261 ("based on a reasonable degree of medical certainty, the sexual intercourse with the defendant caused serious physical harm" to the victim, including her carving of "repent" into her arm).

The Rodriguez panel held that Ohio's aggravated-assault statute "qualifies as a 'crime of violence' " under the enumerated-offense clause. See 664 F.3d at 1039, 1038-39 ("We need not consider whether the crime has as an element the use, attempted use, or threatened use of force, ... or whether the crime fits within the residual clause because it 'otherwise involves conduct that presents a serious potential risk of physical injury to another." (citations omitted) ). The Rodriguez panel provided extensive analysis to support this conclusion, see id. at 1035-39, but simply accepted the defendant's concession that Ohio's aggravated-assault statute "does require violence." See id. at 1039. But a defendant cannot establish the meaning of state law through concession, and, like the Anderson panel, the Rodriguez panel did not refer to or analyze Ohio's statutory definition of "serious bodily harm," nor did it perform the divisibility analysis now required by Descamps and Mathis .

Judge White thought in Anderson , and another panel held shortly thereafter, that Ohio's felonious-assault and aggravated-assault statutes categorically qualified as violent-felony predicates under the identically worded ACCA residual clause. See Anderson , 695 F.3d at 403-06 (White, J., concurring); United States v. Perry , 703 F.3d 906, 910 (6th Cir. 2013). Yet again, neither Judge White nor the Perry panel looked at or analyzed Ohio's statutory definition of "serious physical harm" rather than the ordinary meaning of "serious physical harm." Because the panel in Perry failed to do so, its conclusion that Ohio's felonious-assault and aggravated-assault statutes categorically qualified as violent-felony predicates under language of the ACCA residual clause is no longer good law and should not be applied to the Guidelines context.

True, these are Ohio intermediate appellate court decisions and not decisions from the Ohio Supreme Court. But "Moncrieffe only looked to state intermediate appellate decisions,"Southers , 866 F.3d at 368, and those were sufficient to allow the Supreme Court to determine what state law was. Elliott , Cooper , and Hodges are therefore sufficient to allow us to determine what Ohio law is.

Along the way, the Ohio Supreme Court used some additional language that, taken out of context, could seem to indicate that Ohio's felonious-assault and aggravated-assault statutes are indivisible. See id. at 155 ("these two alternate theories of aggravated assault"); id. ("these two forms of aggravated assault"); id. at 156 ("subdivisions (1) and (2) set forth two means of committing the offense"); id. ("[t]hese subdivisions set forth two different forms of the same offense"). But read in context, the Ohio Supreme Court is referring to occasions such as the one in Brown where a prosecutor charges a defendant with committing aggravated assault under both subsections despite only one instance of conduct that might constitute aggravated assault.

Apprendi v. New Jersey , 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

See e.g. , United States v. Whindleton , 797 F.3d 105, 114 (1st Cir. 2015) ; United States v. Herrera-Alvarez , 753 F.3d 132, 138 (5th Cir. 2014) ; United States v. Ramon Silva , 608 F.3d 663, 670 (10th Cir. 2010).

And, as discussed above, that offense does not qualify under either the Guidelines enumerated-offense clause or the Guidelines residual clause, for those persons sentenced while the Guidelines still had a residual clause.

We have held that Ohio state-court journal entries, such as the ones the government has submitted here, constitute valid Shepard documents. See United States v. Adkins , 729 F.3d 559, 567-68 (6th Cir. 2013)