NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0354n.06

Case No. 20-3925

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>      Plaintiff-Appellee,<br><br>v.<br><br>CESAR MELENDEZ-PEREZ,<br><br>      Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO</td></tr>
</table>

**FILED**
Jul 20, 2021
DEBORAH S. HUNT, Clerk

Before: SILER, MOORE, and THAPAR, Circuit Judges.

SILER, J., delivered the opinion of the court in which MOORE and THAPAR, JJ., joined. MOORE, J. (pg. 7), delivered a separate concurring opinion.

SILER, Circuit Judge. Defendant Cesar Melendez-Perez pled guilty to conspiracy to distribute cocaine and possession with intent to distribute cocaine. The district court sentenced him to 163 months' imprisonment. Now, he challenges his sentence, claiming that the district court improperly designated him as a career offender. For the reasons that follow, we affirm.

I.

In 2019, law enforcement investigated a large-scale drug trafficking operation in Lorain, Ohio, which led to Melendez-Perez's arrest. Thereafter, Melendez-Perez pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Melendez-Perez's presentence report (PSR) calculated his offense level as 34 and found that, based on his offense of conviction and two prior Ohio convictions for domestic violence, he qualified as a career offender. A three-level reduction for acceptance of responsibility brought Melendez-Perez's total offense level down to 31. With a criminal history category of VI, this yielded an advisory guidelines range of 188 to 235 months' imprisonment.

Melendez-Perez objected to his career offender status in light of *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), that his offense of conviction—conspiracy to distribute cocaine—was not a controlled substance predicate offense under the career offender sentencing guidelines. The district court agreed and subsequently adopted a base offense level of 32, as contemplated in the parties' plea agreement. Melendez-Perez also argued that *Havis* disqualified his prior domestic violence convictions as career offender predicate crimes of violence. The district court overruled this objection.

With a three-level reduction for acceptance of responsibility, the court applied an adjusted offense level of 29. The court also classified Melendez-Perez's criminal history category as VI, due to his status as a career offender and because his criminal history score was seventeen. It then calculated Melendez-Perez's guidelines range to be 151 to 188 months. After discussing the applicable 18 U.S.C. § 3553(a) factors, the court imposed a sentence of 163 months' imprisonment for each count, to be served concurrently.

## II.

Melendez-Perez challenges his sentence on one ground. He argues that his two prior Ohio domestic violence convictions, under Ohio Rev. Code § 2919.25(A), do not constitute predicate offenses under the career offender sentencing guideline. He reasons that his prior Ohio domestic

violence convictions do not constitute crimes of violence under USSG § 4B1.1(a) because they are categorically overbroad to qualify as violent felony predicates.  This argument fails.

The sentencing guidelines provide a more severe sentence if the defendant is classified as a "career offender."  USSG § 4B1.1(b).  That enhancement applies if (1) the defendant was at least eighteen years of age when he committed the offense of conviction; (2) the "offense of conviction is a felony that is either a crime of violence or a controlled substance offense"; and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  USSG § 4B1.1(a).

We use the so-called "categorical approach" to determine, *de novo*, whether a prior offense constitutes a "crime of violence" or a "controlled substance offense" under USSG § 4B1.1(a).  *See Havis*, 927 F.3d at 384–85; *United States v. Soto-Sanchez*, 623 F.3d 317, 321 (6th Cir. 2010).  This means we look only to the statutory definition of the offense and not the particular facts underlying the conviction.  *Id.* at 385.

Under the guidelines, an offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  USSG § 4B1.2(a)(1).  "Physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting 18 U.S.C. § 924(e)(2)(B)(i)); *see also United States v. Morris*, 885 F.3d 405, 409 (6th Cir. 2018) (recognizing that § 4B1.2(a)(1) uses the same definition).  "In other words, a predicate crime of violence must have as an element the threat, attempt, or actual use of force capable of causing physical pain or injury to another person."  *United States v. Solomon*, 763 F. App'x 442, 444 (6th Cir. 2019).

Melendez-Perez was convicted under subsection (A) of Ohio's domestic violence statute. At the time of his conviction, this meant that Melendez-Perez "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Ohio Rev. Code § 2919.25(A). Ohio law, then and now, defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." *Id.* § 2901.01(A)(3). And the Ohio Supreme Court has interpreted "injury" to mean the "invasion of any legally protected interest of another." *State v. Suchomski*, 567 N.E.2d 1304, 1305 (Ohio 1991) (emphasis omitted) (quoting *Injury, Black's Law Dictionary* (6th ed. 1990)).

In light of Ohio's inclusive definition of "injury" in this context, Melendez-Perez contends that the domestic violence statute is broader than the "violent force" demanded under *Johnson*. He emphasizes that "[u]nder Ohio law, the element of 'physical harm' can be accomplished without violent force" because the element includes "physiological impairment." And he argues that Ohio's interpretation of physiological impairment is conduct that falls outside of the conduct described in the guidelines career-offender clause as an offense of violence.

As Melendez-Perez admits, we have already faced this issue. In *United States v. Gatson*, 776 F.3d 405, 410–11 (6th Cir. 2015), this court addressed the same domestic violence statute and held that it met *Johnson's* requirements to be a "crime of violence." The government asserts that this holding ends the matter because "Melendez-Perez has not shown that there is an inconsistent decision of the United States Supreme Court that requires modification of *Gatson* or that this court sitting *en banc* has overruled that decision."

Melendez-Perez suggests otherwise. He avers that a subsequent decision about a separate Ohio statute called the *Gatson* holding into question. In *United States v. Burris*, we considered whether Ohio's felonious assault and aggravated assault statutes, Ohio Rev. Code §§ 2903.11(a),

2903.12(A), constituted violent felonies under the ACCA. 912 F.3d 386, 390 (6th Cir. 2019) (en banc) (lead op.). We determined that both statutes were divisible, with "subsection (A)(1) and subsection (A)(2) of each statute set[ting] forth a separate crime." *Id.* at 405 (lead op.). We then held that the (A)(2) crimes were ACCA predicates because they require the use of a deadly weapon or dangerous ordnance. *See id.* at 406 (lead op.). But the (A)(1) crimes, which criminalized the causing of "serious physical harm to another," were not. *See id.* at 400, 406 (lead op.).

With respect to the (A)(1) crimes, we noted that Ohio defines "serious physical harm" to include not only bodily injury but also "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." *Id.* at 397 (lead op.) (quoting Ohio Rev. Code § 2901.01(A)(5)(a)). Examining the statutes and Ohio caselaw led us to conclude "that there is at least a 'realistic probability' that a person may be convicted of" Ohio (A)(1) aggravated or felonious assault "without using physical force, as defined in the ACCA and the Guidelines." *Id.* at 399 (lead op.). Melendez-Perez argues that because Ohio defines "physical harm" to include mental harm, a defendant could commit the crime of domestic violence without using "physical force." It follows, he claims, that domestic violence is not a violent felony under the career offender guidelines.

Melendez-Perez believes that *Burris* dictates this conclusion. But *Burris* does not sweep as broadly as Melendez-Perez claims. *Burris* held that the definition of "serious physical harm," when applied to two *particular* statutes—Ohio's felonious-assault and aggravated-assault statutes—rendered those statutes "too broad to categorically qualify as violent-felony predicates under the ACCA and the Guidelines." 912 F.3d at 399 (lead op.). This matters because we do not look at elements in isolation but at how the statutes as a whole will, in reality, be applied. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013).

Despite Melendez-Perez's argument, the *Burris* "decision concerned an entirely different statute, and this makes all the difference." *Solomon*, 763 F. App'x at 445. *Gatson* held that Ohio Rev. Code § 2919.25(A) qualifies as a career offender predicate. 776 F.3d at 410. In a similar case, we stated that "*Gatson's* holding controls the disposition of this case" and establishes that "the district court correctly found Defendant's prior Ohio domestic violence conviction to be a crime of violence for purposes of the Career Offender Guideline." *United States v. Williams*, 655 F. App'x 419, 422 (6th Cir. 2016).

Melendez-Perez provides no Supreme Court case mandating a departure from *Gatson* and this court sitting en banc has not overruled *Gatson* either, which leaves this panel bound by our precedent. *See United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000). And *Gatson's* holding controls the disposition of this case because "we treat a holding that a crime is categorically a violent felony under the ACCA as controlling as to whether that same crime is a crime of violence under § 4B1.1." *United States v. Hibbit*, 514 F. App'x 594, 597 (6th Cir. 2013). Thus, the district court correctly found defendant's prior Ohio domestic violence convictions to be crimes of violence for purposes of the career offender guideline.

**AFFIRMED.**

KAREN NELSON MOORE, Circuit Judge, concurring. I agree with the majority that our earlier decision in *United States v. Gatson*, 776 F.3d 405 (6th Cir. 2015), controls the outcome of this appeal. I write separately, however, to note that the panel in *Gatson* "read in an assumption of force that the statutory language does not include" and did not "assess how the statute is applied in Ohio" as required under our precedent. *United States v. Solomon*, 763 F. App'x 442, 449 (6th Cir. 2019) (Moore, J., concurring).