TuRNEY, J.,
delivered the opinion of the Court.
The judgment of the Circuit Court must be reversed, because of the admission on the trial, of illegal testimony.
The plaintiff in error, was indicted in the Criminal Court of Greene county, under § 4626 of the Code, which provides:
“Whosoever shall feloniously and with malice aforethought, assault any person, with intent to commit murder in the first degree, or shall administer, or attempt to give any poison or potion for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the penitentiary not less than three, nor more than twenty-one years.”
The indictment is predicated upon the last clause of said section, and charges that plaintiff in error, “unlawfully, wilfully, feloniously and of his malice aforethought, did attempt, with intent to commit murder in the first degree, to give and administer to one George Shipman, colored, a large quantity of certain deadly poison, called white arsenic, by purchasing and procuring the said white arsenic and by placiug the same in the hands of one Benjamin Collins, the minor son of the said Hardy Collins, on the day and year aforesaid, at to-wit: in the county aforesaid, and at the same time and place, advising, directing and commanding the said Benjamin Collins, he the said Collins’ minor son, to give and adminisier the said white arsenic to the said George Shipman, he, the said Hardy Collins, well knowing that the said white arsenic *16 was a deadly poison, with intent then and thereby feloni-ously, willfully, and of his malice aforethought, him, the said George Shipman, to kill and murder in the first degree,” &c.
On the trial, and against the objection of plaintiff in error, J. O. Hankins, a witness for the State, was permitted to state that the physician, or druggist, “who tested the powder,” said it was white arsenic.
Mary King, another witness for the State, was allowed to say, in answer to a question of the Attorney General, plaintiff in error objecting, that Ben. Collins said to her, “my pap gave me something to poison George Shipman with.” There is nothing in the record showing the presence of the plaintiff in error, at the time of these declarations; in fact, we are forced to the conclusion, after looking to the whole record, that he was not present. The evidence is, therefore, mere hear-say, of the most unsatisfactory and unreliable character, and clearly incompetent.
The plaintiff in error, was convicted and sentenced to the penitentiary for three years.
There was motion in arrest of judgment, and the following reasons assigned:
1st. Said indictment does not charge that the defendant made any assault, as required by statute.
2d. That said indictment does not show that the grand jurors found the same upon their oath, as grand jurors.
3d. That said indictment charges said defendant, as a principal, yet upon its face, it shows that, if guilty at all, he would be an accessory before the fact.
4th. That the defendant stands convicted by the verdict of the jury, of a felony, when the indictment only charges *17 bim with an attempt to commit crime, which is not a felony, but a misdemeanor.
The court overruled the motion upon these propositions. There was no error in the ruling of the court.
The first assignment is answered by the statute under which the indictment is had. The offense charged, although in the same section, is in a separate and distinct sentence from the one in which the word “assault” is used, the two sentences defining distinct offenses, and affixing to each a punishment, the one greater than the other. The term “assault” has no reference to the crime last defined.
The second assignment is a misconception of the record, the caption of which, as well as that of the indictment, recites that the jury was sworn, and the body of the indictment averring “the Grand Jurors, aforesaid, upon their oaths, aforesaid, do say, &e.”
The third and fourth assignments embrace the ground mainly relied upon in argument, for the accused, in support of which, it is earnestly, and, we must say, ably insisted, that the charges of the indictment, upon the facts, do not make contemplated by the statute.\^ It is argued that, if the prisoner procured the poison and gave it to another, with instructions and command to that other, to “put it in George Shipman’s coffee, or apples, or any thing he ate,” although it appears that George Shipman, whom it is alleged that the prisoner purposed to poison, and Ben. Collins, the son of the prisoner, to whom the prisoner gave the poison, with the instructions mentioned, lived at the same place, is not an “attempt to give poison.”
*18 "We can not concur in this construction of the law. The son of the prisoner, assuming the allegations to be true; as we must upon the consideration of the question as presented; was merely the instrument, through and by which the prisoner purposed and intended to accomplish his purpose; the fact that it is an agent, responsible or irresponsible, does not change the result from his conduct. The person used is, so far as the crime of the prisoner is concerned, just as would be an inanimate means used to effect the ends desired, simply the instrument. If the prisoner, knowing the place at which his intended victim ate, had gone there and fixed the poison in a way likely to be taken, or in any way which he thought would make it likely to be taken by Shipman, this would be an attempt to give; or if he, knowing Shipman was in the habit of passing in a certain direction, were to place poison or poisoned food in his path, intending him to eat it, although Shipman did not pass in the direction, and, as a consequence, did not eat the poison, still the conduct of the prisoner would be an attempt to give.
If the son had put the poison in the coffee, apples, or other food of Shipman, or had by any means, induced him to take the poison, as instructed and commanded by •his father, and death had ensued, both would have been guilty, according to the definition of the statute, of administering poison.
In this case, according to the indictment, the intent to give is perfect, the plan of giving determined, and its execution set in motion, the poison has left the hands of the prisoner, in furtherance of his purpose, but fails, not *19 because of his abandonment of the design, but because of the insufficiency of his medium.
The word “attempt/’ as used in the statute, contemplates a failure. Such is its usual import; it has this definite and restricted meaning in the statute.
Administering poison being one offense, and attempting to give, another, the remoteness or unreliability of the means used, the purpose being well ascertained, can avail the accused nothing.
Such, we think, was the meaning of the Legislature passing the act.
This interpretation of the law is supported by the case of The Queen v. Michael, 2 Moody’s British Crown Cases, 163, in wjiich it appears the prisoner delivered to Sarah Stephens, the nurse of a child, a quantity of laudanum, telling her it was a proper medicine for the child, and directing her to administer to the child, every night, a teaspoonfnl. It was shown to be the prisoner’s intention to kill the child. Sarah Stephens took the laudanum home with her, not intending to give it at all; left it on the mantelpiece in her room, which was in a different house from where the prisoner resided. Some days afterwards, a little boy of Sarah Stephens, five years of age, during the absence of Sarah, administered to the child a much larger dose than a teaspoonful, and the child died in consequence. This was held, we think properly, to be murder on the part of the prisoner.[1]
*20 The indictment here is a good one; sufficiently describing the offense defined in the statute.
Because of the admission of illegal testimony, the judgment is reversed and the prisoner will be remanded for a new trial.

 See Acc., 2 East, 5; People v. Bush, 4 Hill, 133; Holloway v. Reg,, Den. & Pierce, 287.