**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0255n.06

Case No. 18-5510

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 15, 2019

DEBORAH S. HUNT, Clerk

|                             |     |                                    |
|-----------------------------|-----|------------------------------------|
| DANNY LEE BANKS,            | )   |                                    |
|                             | )   |                                    |
|   Petitioner-Appellant,     | )   |                                    |
|                             | )   | ON APPEAL FROM THE UNITED          |
| v.                          | )   | STATES DISTRICT COURT FOR          |
|                             | )   | THE WESTERN DISTRICT OF            |
| UNITED STATES OF AMERICA,   | )   | TENNESSEE                          |
|                             | )   |                                    |
|   Respondent-Appellee.      | )   |                                    |

BEFORE: MOORE, SUTTON, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. The Armed Career Criminal Act increases the punishment for felons who unlawfully possess firearms (or, as in this case, ammunition) from a maximum of ten years' imprisonment to a minimum of 15 years if the defendant has three prior convictions that qualify as "violent felonies." *Compare* 18 U.S.C. § 924(a)(2), *with id.* § 924(e)(1). Under what has been labeled the "elements" or "use-of-force" clause, the Act defines the phrase "violent felony" to include crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). Today, we must decide whether this elements clause reaches a Tennessee offense—assault with intent to commit first-degree murder, Tenn. Code Ann. § 39-2-103(a) (1982)—that has been repealed for some 30 years. We hold that it does.

I.

We detailed Danny Lee Banks's violent criminal career on direct appeal from his felon-in-possession conviction under 18 U.S.C. § 922(g). *United States v. Banks*, No. 96-5597, 1997 WL 561421, at *1–2 (6th Cir. Sept. 9, 1997) (per curiam). In 1981, a 16-year-old Banks pleaded guilty to manslaughter after shooting and killing another teenager. *Id.* at *1. In 1987, while paroled for two attempted burglaries, Banks "was convicted of robbery and assault with intent to commit murder" for two separate episodes, during one of which he "shot a man in the chest at close range." *Id.* Soon after his release for those crimes, Banks went on "another vicious crime spree." *Id.* On November 4, 1991, he shot up an apartment complex, holding residents at gunpoint. *Id.* On December 14, he shot two victims during an armed robbery. *Id.* at *2. Two weeks later, he shot another victim during another armed robbery. *Id.* On January 5, 1992, he committed a carjacking. *Id.* All told, this crime spree led to various state convictions in 1993 for attempted murder, attempted aggravated robbery, and aggravated robbery. *Id.*

Banks's federal conviction stemmed from a different event on November 26, 1991. *Id.* at *1. After responding to a complaint, police found ammunition on Banks and a gun in the car that he had been driving. *Id.* The United States charged him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). A jury convicted him of possessing the ammunition, but not the firearm. *Id.* Banks's presentence report treated him as qualifying for the Armed Career Criminal Act's sentencing enhancement, 18 U.S.C. § 924(e)(1), based on five convictions from the 1980s: the manslaughter conviction, the two attempted burglary convictions, the robbery conviction, and the assault-with-intent-to-commit-first-degree-murder conviction. Departing upward from the Sentencing Guidelines' calculated range, the district court sentenced Banks to life in prison. *Id.* at *2–3. We affirmed on direct appeal. *Id.* at *3–4. At that time, Banks did not dispute his eligibility for the Armed Career Criminal Act's sentencing enhancement.

Nearly twenty years after Banks's conviction, the Supreme Court held that another part of the Act's violent-felony definition—the "residual clause" covering a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)—was too vague to be judicially enforceable under due-process principles. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). The next year, the Court made *Johnson* "retroactive in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Banks filed a § 2255 motion on *Welch*'s heels alleging that his Armed Career Criminal Act enhancement violated due process because his prior convictions could qualify as "violent felonies" only under the unconstitutional residual clause. The United States responded that Banks's robbery convictions (one from 1987 and four from 1993) were "violent felonies" under the elements clause's separate definition (which *Johnson* did not affect). But four of those convictions, Banks replied, came after the 1991 possession of ammunition for which he was convicted, and so could not qualify as "previous" convictions under 18 U.S.C. § 924(e)(1). The district court ordered another answer, and this time the United States said that Banks's manslaughter conviction (from 1981), robbery conviction (from 1987), and assault-with-intent-to-commit-first-degree-murder conviction (from 1987) also qualified as violent felonies under the elements clause.

The district court agreed and denied Banks's § 2255 motion. *Banks v. United States*, No. 16-cv-02275, 2018 WL 1954840, at *5–11 (W.D. Tenn. Apr. 25, 2018). It also denied the certificate of appealability that Banks needed to appeal. *Id.* at *11–12; 28 U.S.C. § 2253(c)(1).

Banks turned to us for such a certificate. We granted one. While we have held that the Tennessee statute barring assault with intent to commit first-degree murder falls within the now-unconstitutional *residual* clause, we left open whether it fell within the still-valid *elements* clause. *United States v. Jones*, 673 F.3d 497, 505–06 (6th Cir. 2012). We confront that question here.

3

## II.

The Tennessee statute that underlies our certificate of appealability provided: "Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, or shall administer or attempt to give any poison for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the state penitentiary for not less than five (5) nor more than twenty-five (25) years." Tenn. Code Ann. § 39-2-103(a) (1982), *repealed by* 1989 Tenn. Pub. Acts 1169 § 1. Banks asserts three challenges to the district court's conclusion that the assault portion of this statute fell within the elements clause. *First*, he argues that the United States waived reliance on his assault conviction. *Second*, he argues that the assault and poisoning parts of the statute are not "divisible" from one another under our cases, and that the poisoning portion does not contain the "physical force" required by the elements clause. *Third*, he asserts that, even if the statute were divisible, the assault portion also does not include the necessary physical force. We take these three arguments in turn.

*Did the United States waive reliance on Banks's assault conviction?* No. It is debatable whether this argument even falls within the scope of the question on which we granted a certificate of appealability. *See Dunham v. United States*, 486 F.3d 931, 934–35 (6th Cir. 2007). Regardless, Banks is mistaken. The United States' initial answer to his § 2255 motion did not "waive" (that is, intentionally abandon) the use of his assault conviction; it expressly stated that, if needed, the United States might invoke it. *See United States v. Olano*, 507 U.S. 725, 733 (1993). Nor did the United States "forfeit" (that is, fail to timely raise) the use of this conviction by inadequately addressing it in its answer. *See id.* Banks points to no statute or procedural rule commanding that such a response exhaust all arguments in detail. *Cf.* 28 U.S.C. § 2255(b); Rule 5(b) of the Rules Governing § 2255 Cases. Even assuming (without deciding) that the United States needed to do so, the district court gave the United States an opportunity to file another response. The rules

4

governing § 2255 proceedings authorize amended pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); Rule 12 of the Rules Governing § 2255 Cases. And, even for affirmative defenses, the Supreme Court has held that a habeas court may on its own initiative order additional briefing to address an overlooked defense. *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

For his part, Banks cites *Armstrong v. United States*, 107 F. App'x 522 (6th Cir. 2004) (order), which held that a district court wrongly found a habeas claim untimely when the government's answer failed to raise a statute-of-limitations defense. *Id.* at 523. To the extent *Armstrong* holds that a district court may never *sua sponte* raise such a defense, it did not survive *Day*. 547 U.S. at 209. The district court in *Armstrong*, moreover, appears to have invoked the defense without giving the defendant "fair notice and an opportunity to present [his] position[]." *Id.* at 210; *Armstrong*, 107 F. App'x at 523. Here, however, the district court allowed Banks to file a reply and evidence to explain why his assault conviction was not a violent felony.

*Is Tennessee's assault statute "divisible"?* Yes. Before explaining why, we must set the stage with some well-worn Armed Career Criminal Act basics. "Since 1990, the Supreme Court has instructed federal sentencing courts to use the 'categorical approach' to determine whether a defendant's previous state or federal felony convictions 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another.'" *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc). This approach bars courts from diving into the details of specific crimes to decide whether specific defendants used force on specific occasions. *Id.* Instead, courts ask more categorically (hence, the name) whether a crime *necessarily* entails the use, attempted use, or threatened use of force such that *all* defendants convicted of the crime must have done so. *Id.* If not, the offense does not count as a violent felony as a legal matter, even

5

though many defendants—like Banks, who "shot a man in the chest at close range," *Banks*, 1997 WL 561421, at *1—will have used violent force as a factual matter. *Burris*, 912 F.3d at 392.

This "categorical approach" sometimes comes with a modification—one that the Justices have "not very inventively" (their words, not ours) dubbed the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013). This approach gets triggered by "so-called 'divisible statute[s].'" *Id.* A divisible statute "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Such a statute, for example, may define aggravated assault as *either* causing serious injury *or* causing injury with a weapon. *E.g.*, *Davis v. United States*, 900 F.3d 733, 736 (6th Cir. 2018). These statutes create *distinct* crimes with different *elements*, and the modified categorical approach allows courts to examine certain records ("for example, the indictment, jury instructions, or plea agreement and colloquy") to figure out which offense a defendant committed. *Mathis*, 136 S. Ct. at 2249. Some statutes, however, will list only separate *means* (such as using "a 'knife, gun, bat, or similar weapon'") to commit a *single* crime ("use of a 'deadly weapon'"). *Id.* (citation omitted). For these statutes, courts revert to the categorical approach by asking if the entire offense—including the *least* forceful "means" of violating it—falls within the elements clause. *Id.* at 2251–57.

This divide raises a question: How do courts distinguish a statute that lists separate elements identifying separate crimes from one that lists separate means for committing the same crime? The Supreme Court has offered guideposts. *Id.* at 2256. If a state supreme court has already answered this elements-versus-means question, its reading controls the state-law issue. *Id.* Or the statute may offer textual clues on its face. If, for example, different alternatives generate different punishments, those alternatives necessarily qualify as elements that must be found by a jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.* Judicial records might offer a third

clue: if specific alternatives are routinely charged in state indictments, state actors more likely treat the alternatives as elements rather than means. *See Burris*, 912 F.3d at 403–04.

With this summary complete, we can return to the Tennessee assault statute. We find this statute divisible into two offenses: (1) "feloniously and with malice aforethought assault[ing] any person, with intent to commit murder in the first degree," and (2) "administer[ing] or attempt[ing] to give any poison for that purpose." Tenn. Code Ann. § 39-2-103(a) (1982). Both state decisions and state indictments guide us to this conclusion. *See Mathis*, 136 S. Ct. at 2256–57.

Start with state decisions. The Tennessee legislature enacted the assault-with-intent-to-commit-first-degree-murder statute in 1829. *See* 1829 Tenn. Pub. Acts 27, 39 § 52. In the ensuing decades, the Tennessee Supreme Court issued a trio of decisions clarifying that the statute "include[d] two classes of cases" (assault and poisoning), *Floyd v. State*, 50 Tenn. 342, 345 (1872), and that these two classes "define[d] distinct offenses," *Collins v. State*, 50 Tenn. 14, 17 (1870).

The trio begins with *Dains v. State*, 21 Tenn. 439 (1841). There, the defendant had been convicted of the assault offense. *Id.* at 439–40. His "friendly invitation to drink," by the end of the night, had turned into a "violent blow with [his] axe," and the court addressed whether this assault arose from an intent to murder. *Id.* at 440–42. The court explained that the assault must be "of such a character, and made under such circumstances, that, had death ensued, [the defendant] would have been guilty of murder in the first degree." *Id.* at 440. That crime, in turn, required that the defendant act "wilfully, deliberately, maliciously, and with premeditation." *Id.* Yet the evidence failed to show that the defendant had acted with premeditation. *Id.* at 441–42.

*Collins* addressed the poisoning offense. 50 Tenn. at 16. The defendant there argued that the indictment charging him with attempted poisoning did not make out a statutory violation because it nowhere alleged "any assault." *Id.* The Tennessee Supreme Court gave short shrift to

this argument, explaining that it was "answered by the statute under which the indictment [was] had." *Id.* at 17. It said that the assault and poisoning provisions created "distinct offenses." *Id.*

Completing the trifecta, *Floyd* discussed the relationship between the two offenses. While Tennessee's murder statute then treated "[a] murder perpetrated by lying in wait" as a first-degree murder without the need to prove premeditation, *Floyd* recognized that the assault statute lacked this "lying in wait" text. 50 Tenn. at 344–45. The court thus held that an assault committed by a defendant "lying in wait" still required proof of premeditation to commit murder, as opposed to some other felony. *Id.* at 345–46. When reaching this result, the court recognized that the assault statute *did* "include cases where poison is administered or attempted to be given for the purpose of murder." *Id.* at 345. The court thus found that it created "two classes of cases." *Id.* In the first, "where poison is administered or attempted to be given," "no proof of deliberation or premeditation is necessary." *Id.* In the second, where there is an "assault," "deliberation and premeditation must be proved." *Id.* To sum up, state decisions have treated these alternatives as distinct offenses with distinct elements. *See Mathis*, 136 S. Ct. at 2256.

Now turn to state indictments. The "record of [Banks's] prior conviction" tends to suggest that the offenses are distinct. *Id.* at 2256–57. His indictment charged him with the assault (not the poisoning) offense and listed the premeditation element required for only the former (not the latter). It was no outlier. *See Burris*, 912 F.3d at 404. A sampling of cases shows that other indictments also have identified the portion of the statute under which a defendant was charged—whether poisoning, *see Collins*, 50 Tenn. at 15–16, or assault with premeditation, *see Pryor v. Rose*, 724 F.2d 525, 527 (6th Cir. 1984) (en banc); *Cooley v. State*, 14 S.W. 556, 556 (Tenn. 1889); *Partee v. State*, No. M2008-01773-CCA-R3-HC, 2008 WL 4949246, at *4 (Tenn. Crim. App. Nov. 20, 2008). Indeed, when an indictment failed to include the premeditation element, the

Tennessee Supreme Court noted that it did not properly charge assault with intent to commit first-degree murder. *See State v. Saylor*, 74 Tenn. 586, 587 (1880).

Banks's arguments fail to convince us otherwise. He begins with textual grounds for believing that the alternatives list separate means for a single crime: (1) the statute identifies the alternatives in one sentence rather than subsections; (2) the title "assault with intent to murder" covers both alternatives; and (3) a nearby subsection increases the punishment if bodily injury results from "such an assault" (language most naturally read to cover poisoning). All fair points. But Banks makes them to the wrong court. *Mathis* teaches that state courts are in charge of deciding whether alternatives create separate offenses. 136 S. Ct. at 2256. And Tennessee's courts have treated this statute as creating "two classes of cases," one of which has a premeditation element and the other of which does not. *Floyd*, 50 Tenn. at 345. Banks responds that these older cases addressed earlier versions of the statute, and that *Collins* suggested that the two alternatives at that time were in different sentences with different punishments. *Collins*, 50 Tenn. at 17. But *Collins* also elsewhere recognized that the poisoning offense was in "the last *clause* of said section." *Id.* at 15 (emphasis added). Later decisions have also adhered to the same distinctions, *e.g.*, *Curry v. State*, 290 S.W. 25, 26 (Tenn. 1926), and the 1850s statute largely mirrors the 1980s statute, *compare* Tenn. Code § 4626 (1858), *with* Tenn. Code Ann. § 39-2-103(a) (1982). To top it off, our Court has not been troubled by finding that even different verbs in a list of verbs created separate offenses. *E.g.*, *United States v. Eason*, 919 F.3d 385, 389 (6th Cir. 2019).

Banks next turns to a pragmatic point, finding it odd that a single act—"such as thrusting a poison-soaked rag into someone's face"—could violate both offenses. That is not as uncommon as he believes. The Tennessee Supreme Court explained that one could violate the assault-with-intent-to-murder statute and the assault-with-intent-to-rob statute if the defendant harbored both

intents during one assault. *Curry*, 290 S.W. at 26. And we have found an assault statute divisible even though a defendant could simultaneously violate both alternatives (causing serious injury and causing injury with a deadly weapon). *Burris*, 912 F.3d at 403–04.

Banks lastly suggests that the assault and poisoning alternatives must be the same offense because they carry the same punishment. Not so. To be sure, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis*, 136 S. Ct. at 2256. But the opposite is not true. Just because different punishments necessarily show *different* offenses does not mean that the same punishment necessarily shows the *same* offense. Or, for those who prefer formal logic, Banks's reasoning suffers from the "fallacy of denying the antecedent." *United States v. Burtons*, 696 F. App'x 372, 378 (10th Cir. 2017).

One last point. Banks does not dispute that the state charged him with (and he pleaded guilty to) the assault offense. Thus, so long as that offense falls within the elements clause, it does not matter whether the poisoning offense also does so. *See Mathis*, 136 S. Ct. at 2249.

*Does the assault offense satisfy the elements clause?* Yes. As noted, the elements clause defines "violent felony" to mean a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The text's key phrase (physical force) commonly means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). Two cases help visualize the force that surmounts this "violent" mark. *Stokeling* found that the force required for common-law *robbery* (the "force necessary to overcome resistance by a victim") rose to the violent level. 139 S. Ct. at 550–54. But *Johnson* held that the force required for common-law *battery* (the force necessary for "the slightest offensive touching") fell short. 559 U.S. at 139.

10

The text next requires that the crime include the "use," "attempted use," or "threatened use" of this violent force "against the person of another." The first word ("use") commonly means "the 'act of employing' something," so this portion of the clause clarifies that it covers crimes that require "an active employment of" the amount of force that *Johnson* and *Stokeling* demand. *See Voisine v. United States*, 136 S. Ct. 2272, 2278–79 (2016) (citation omitted). The second two phrases—"attempted use" and "threatened use"—clarify that a crime that does not require the *use* of violent force may still fall within the elements clause if it requires a *threat* or *attempt* of force reaching the violent level. *E.g.*, *United States v. Rafidi*, 829 F.3d 437, 445–46 (6th Cir. 2016); *see also Black's Law Dictionary* 127, 1480 (6th ed. 1990) (defining "attempt" and "threat").

Under either the Armed Career Criminal Act or the similarly worded Guidelines provision, we have applied these rules to a mix of "assault" or "battery"-like statutes that, in one form or another, punish a defendant for causing physical harm. We have held that this type of statute includes the *use* of "violent force" if, among other things, it requires defendants to cause a sufficient level of physical harm rising above *Johnson*'s mere "offensive touching." *Compare United States v. Mendez*, 593 F. App'x 441, 443–44 (6th Cir. 2014), *with United States v. Morris*, 885 F.3d 405, 411 (6th Cir. 2018). We have added that, even if the statute fails to reach that level, it may still qualify as the *attempted* or *threatened* use of violent force. So, for example, a statute that prohibits assault with a deadly weapon falls within the elements clause because, while it may include only a level of force that *Johnson* found insufficient, the use of a deadly weapon during the assault shows that violent force was at least attempted or threatened. *See United States v. Harris*, 853 F.3d 318, 321 (6th Cir. 2017).

These principles lead us to hold that the Tennessee assault offense in this case categorically includes the "attempted use" of violent force. This offense combines a somewhat undemanding

11

*actus reus* (assault) with a very demanding *mens rea* (intent to commit first-degree murder). Before 1989, assault was a "common law offense" in Tennessee. *Hagood v. State*, 190 S.W.2d 1023, 1023 (Tenn. 1945). An assault was "an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do harm being essential." *Cowley v. State*, 78 Tenn. 282, 284 (1882) (citing *Richels v. State*, 33 Tenn. 606, 608 (1854)). We are not sure whether this common-law crime's "corporal injury" element covered even an attempt to commit a common-law battery (that is, an attempt to use a level of force that *Johnson* found insufficient). *Cf.* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(a) (3d ed.), Westlaw (database updated Oct. 2018); 3 W. Blackstone, *Commentaries on the Laws of England* *120.

We need not decide that issue today. As noted, the Tennessee assault offense in this case also was a "specific-intent crime," *State v. Witherspoon*, 769 S.W.2d 880, 882 (Tenn. Crim. App. 1988), requiring a defendant to intend a premeditated murder, *Phillips v. State*, 455 S.W.2d 637, 641 (Tenn. Crim. App. 1970). Thus, Banks "could not have been convicted of nonviolent assault because the crime he was convicted of included as an element an intent to do great bodily harm"—indeed, the greatest of bodily harms. *Raybon v. United States*, 867 F.3d 625, 631–32 (6th Cir. 2017). This intent means that *all* defendants convicted of the offense will have attempted "violent force." That makes this offense like Michigan's assault with intent to do great bodily harm or Florida's assault with intent to commit murder—both of which fall within the elements clause. *See id.*; *United States v. Pittro*, 646 F. App'x 481, 483–85 (6th Cir. 2016).

Banks's responses again come up short. Citing language from our decision in *Pryor* that this offense requires only an "overt act" and a specific intent, 724 F.2d at 530, Banks argues that the overt act need not be "physical force." Yet the elements clause's text reaches not just the *actual* use of physical force, but also its *attempted* use. And the black-letter definition of "attempt"

12

combines the required intent to commit the crime with an overt "act" in furtherance of it. *Black's Law Dictionary* 127 (6th ed. 1990). This same "attempted use" language dooms Banks's related argument that common-law assault in Tennessee might reach defendants who merely "frighten others" without laying a finger on them. Again, an attempt to commit serious physical harm suffices so long as the harm rises to the "violent" level. *See Rafidi*, 829 F.3d at 446. Under this Tennessee assault statute, the attempted harm (killing another) exceeds that level.

Banks also argues that one could cause the physical *harm* necessary for the assault offense without using the physical *force* necessary for the elements clause. He posits such hypotheticals as "deceiving someone into walking into an open sinkhole" or "locking someone in a cryogenic chamber." Our court has rejected textual arguments (and creative hypotheticals) of this kind. We have instead equated physical force with physical harm, holding that a "defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.'" *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (quoting *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012)). We are not alone in doing so. According to a recent Fifth Circuit decision, all circuit courts have now reached the same conclusion under the Armed Career Criminal Act or its Guidelines equivalent. *See United States v. Reyes-Contreras*, 910 F.3d 169, 180–81 & n.23 (5th Cir. 2018) (en banc) (citing cases); *cf. United States v. Castleman*, 572 U.S. 157, 170 (2014).

\* \* \*

We affirm the district court's judgment denying Banks's § 2255 motion.