reject the dual sovereignty rule or modify it and eliminate it to the extent that there are adequate remedies at state law for prosecution, which have been exercised." We have held that dual prosecutions do not violate double jeopardy, *see United States v. Holmes*, 111 F.3d 463 (6th Cir. 1997), and this precedent is binding upon us. The defendant's claim is without merit.

D.    *Consecutive Sentences*

Although prosecuted under one indictment, Elisha was convicted of two counts of using a deadly or dangerous weapon during a crime of violence. He was sentenced to one consecutive five-year prison term and one consecutive twenty-year prison term for the two firearm offenses. *See* 18 U.S.C. § 924. The United States Supreme Court has held that even though a defendant is convicted of multiple firearm violations in the same proceeding, 18 U.S.C. § 924 imposes a five-year consecutive prison sentence for the first violation of § 924(c)(1) and an additional twenty-year consecutive prison sentence for each additional violation of § 924(c)(1). *See Deal v. United States*, 508 U.S. 129, 132 (1983). The defendant argues that we should overrule *Deal*. Obviously, this court has no power to do so.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and sentence of Elisha Jacobs.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0094P (6th Cir.)
File Name:  01a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*                                      No. 99-5621

ELISHA JACOBS,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 98-00002—Joseph M. Hood, District Judge.

Argued:  October 31, 2000

Decided and Filed:  February 26, 2001[*]

Before:  KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Michael S. Endicott, Paintsville, Kentucky, for Appellant.   John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

[*]This decision was originally issued as an "unpublished decision" filed on February 26, 2001. On March 26, 2001, the court designated the opinion as one recommended for full-text publication.

**ON BRIEF:** Michael S. Endicott, Paintsville, Kentucky, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., Kenneth R. Taylor, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

————————————

## OPINION

————————————

ALICE M. BATCHELDER, Circuit Judge. Elisha Jacobs appeals his conviction and sentence following a jury trial on charges of kidnaping, interstate domestic violence, interstate violation of a protective order and various gun offenses. Jacobs claims that the trial court erred in refusing to sever the counts of the indictment into two separate trials. He also claims that misconduct on the part of the prosecutor denied him a fair trial; that his trial violated the constitutional prohibition against double jeopardy; and that he was improperly sentenced to consecutive minimum sentences on the gun offenses. Finding no merit in any of these claims of error, we will affirm the judgment of the district court.

## I.  FACTS

Elisha and Lauretta Jacobs were married on July 2, 1988. Lauretta had four children, three sons and a daughter, from an earlier relationship. Lauretta and Elisha then had two children together. In December 1996, Lauretta and the children moved from the couple's home in Kentucky to Indiana, after Lauretta obtained a protective order against Elisha, occasioned by Loretta's claim that he had molested her daughter (his step-daughter) a month earlier. Lauretta filed criminal charges against Elisha in January 1997.

The following month, Elisha called Lauretta and told her to come to his parents' home to get some money to help with her living expenses. Lauretta testified that when she arrived at her in-laws' home, Elisha immediately accosted her and punched her in the face, injuring her mouth and damaging her teeth. Armed with a shotgun and a knife, Elisha forced

doesn't even have to have shells for him to have a firearm. He didn't have to have shells to scare her. The shells are not the issue. The firearm is the issue at this point.

Mr. Endicott [defense counsel] didn't ask what did he do with the shotgun because he didn't want to hear the answer, perhaps. And I didn't ask it, either. So he's asking you to speculate where the shotgun was and whether or not it was loaded.

On appeal, Elisha argues that this rebuttal argument was inappropriate because it included facts that were not in evidence. *See Berger v. United States*, 295 U.S. 78 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955). In reviewing whether a prosecutor's comments constitute reversible error, we must consider the prosecutor's statements in context to determine whether they affected the fairness of the trial. *See United States v. Hickey*, 917 F.2d 901, 905 (6th Cir. 1990). It is also appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements. *See id.*

Here, defense counsel opened the door by suggesting that Lauretta had been left alone several times with a loaded gun, himself arguing facts that were not in evidence. To rebut this argument, the prosecutor suggested an alternative scenario—that Elisha took the shotgun shell with him into the store, leaving the unloaded gun behind. Viewing the prosecutor's statement in the entire context of the closing argument, it is clear to us that the government's argument was a legitimate response to the defense's speculative closing argument, and the government did not act egregiously or with the intent to deceive. We find no reversible error.

### C.  *Dual Sovereignty*

The defendant argues that he was doubly punished because he was convicted by both the state and federal governments for the Indiana abduction. He argues that "the court should

Finally, the record reflects that the district court gave specific cautionary instructions to minimize the possible prejudice, instructing the jury to consider separately the evidence relating to each charge and cautioning the jury not to let their decision on one charge influence their decision on any other charge. We consider whether such curative instructions were given when reviewing a lower court's decision to deny a defendant separate trials. *See United States v. Gibbs*, 182 F.3d 408, 434 (6th Cir. 1999). Because the facts of all the charges were intertwined and because the district court gave specific instructions to minimize the prejudice to the defendant, we hold that the district court did not abuse its discretion in denying the motion to sever the charges.

B. *Prosecutorial Misconduct*

In his closing argument, defense counsel argued that Lauretta was a willing companion on the trip to Tennessee. He claimed specifically that the couple had stopped several times along the way; that Elisha had left Lauretta and the gun in the truck at each stop; and that Lauretta never took any of those opportunities to escape or to get help. In its rebuttal argument, the government countered the defense's contention:

> And he [Jacob's counsel] makes this point about, well, the shotgun was in the truck with her when he went in the store. Well, sometimes I don't ask all the questions, and no one asked Lauretta, not me, not him, what happened to the shotgun when he went in. But how hard is it on a single barrel shotgun to take the shell out, the one shell out, and put it in your pocket and put the shotgun under the seat?
>
> * * *
>
> How hard is it to take the shell out of the shotgun and put it in the pocket? A shotgun laying in the truck is just a stick. She might as well have a tire iron. And he says, well, he didn't find any shells. He kept the shells in his pocket. He took the shell out of it and left with it. He

Lauretta into his truck and they drove into Tennessee, making several stops for gas or beverages before stopping at a motel for the night. There the couple engaged in sex. Elisha returned Lauretta to Kentucky the next day, where she was able to get to a hospital to report the abduction to the police and to have the injuries to her mouth treated. The police photographed her injuries and ordered a rape kit. Lauretta later admitted that she had consented to have sex with Elisha, but that she did so because she was afraid for her life.

After the Tennessee abduction, Elisha was arrested and held on a substantial bond until, in April 1997, his bond was reduced and he was released. He wasted no time in traveling from Kentucky to Lauretta's new home in Kenderville, Indiana. Around 9:30 p.m., on April 28, 1997, Elisha turned off the electricity to her trailer, restored the power a few minutes later, and then knocked at the front door. When Lauretta did not open the door, Elisha crashed through a closed window into the livingroom, brandishing a gun. He found Lauretta barefooted, wearing only a t-shirt and shorts, and dragged her—by the hair—out of the trailer and into the 29°F night, across cornfields and a partially downed barbed wire fence, injuring her bare leg. Lauretta eventually was able to escape; she was discovered along the highway and taken to the hospital where her injuries were documented by the hospital staff. Elisha generally does not deny the circumstances of this second abduction (the "Indiana abduction").

Elisha pled guilty in Indiana state court to abducting Lauretta in Indiana, and was sentenced to 15 years in state prison. He was then charged in a federal indictment with four counts relating to the Tennessee abduction: kidnaping, in violation of 18 U.S.C. § 1201; interstate domestic violence and causing the crossing of a state line, in violation of 18 U.S.C. § 2261(a)(2); use of a deadly weapon during a crime of violence, in violation of 18 U.S.C. § 924(c); and interstate violation of a protective order, in violation of 18 U.S.C. § 2262. The indictment also contained three counts relating to the Indiana abduction: interstate domestic violence and

crossing a state line, in violation of 18 U.S.C. § 2261(a)(1); possession of a firearm while subject to a court order, in violation of 18 U.S.C. § 922(g)(8); and use of a deadly or dangerous weapon during a crime of violence, in violation of 18 U.S.C. § 924(c). Elisha moved to have the counts relating to the Indiana abduction severed for separate trial, but the district court denied the motion, finding that because both of the abductions had allegedly been prompted by Lauretta's filing of criminal charges against Elisha, the two incidents were part of a common scheme or plan.

Elisha was found guilty on all seven counts and sentenced to 70 months on counts 1, 2, 4, 5 and 6, to run concurrently with any sentence imposed in any other matter; 60 months on count 3—the first § 924(c) count—to run consecutively with any sentence imposed for these federal offenses and any sentence imposed in any other matter; and 240 months on count 7—the second § 924(c) count—to run consecutively with any sentence imposed for these federal offenses and any sentence imposed in any other matter. He was further sentenced to three years supervised release and a special assessment of $700. This timely appeal followed.

## II. ANALYSIS

A.  *Joinder*

Elisha assigns as error the district court's denial of his motion to sever the Tennessee counts from the Indiana counts for separate trials. The Federal Rules of Criminal Procedure allow for the joinder of offenses under certain circumstances.

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

FED. R. CRIM. P. 8(a). If the joinder of offenses under Rule 8(a) would prejudice either the defendant or the government, the district court may order separate trials. *See* FED. R. CRIM. P. 14. We review the denial of a motion under Rule 14 for abuse of discretion. *See United States v. Bencs*, 28 F.3d 555, 559 (6th Cir. 1994); *United States v. Moore*, 917 F.2d 215, 219 (6th Cir. 1990).

Elisha moved to have the counts severed because he believed he would be unduly prejudiced if the jury heard the facts surrounding the Indiana abduction (the facts of which he generally admits) while they were also assessing his credibility on the question of the Tennessee abduction (which he contends was a consensual trip). He argues that the district court's denial of separate trials prejudiced him because he was faced with the Hobson's choice of either testifying about both incidents, which would require him to admit his guilty plea to the Indiana state charges, or not testifying at all, which would preclude him from explaining his side of the story in the Tennessee abduction. *See Cross v. United States*, 335 F.2d 987, 990-91 (D.C. Cir. 1964). In *Cross*, the D.C. Circuit held that a defendant, under similar circumstances, was prejudiced because he had favorable testimony to defend himself on the first count, but his testimony on the second count was damaging. *See id.* In *Cross*, the defendant decided to testify at trial.

The facts of this case are similar to those in *Cross*. There is, however, one important distinction. In this case, a single motivation apparently prompted the two attacks on Lauretta Jacobs—Elisha wanted her to drop the criminal charges she had brought against him. Because, as the district court properly concluded, both abductions were part of a common scheme, the counts in the indictment are factually intertwined, a situation quite different from that in *Cross*, where the two robberies were distinct. Here, even if the charges were tried separately, evidence from each crime would have been admissible in the trial of the other because of the common scheme or plan. *See* FED. R. EVID. 404(b).