NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0494n.06

No. 20-5761

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
10/28/2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ELISHA JACOBS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| UNITED STATES OF AMERICA, | ) | |
| | ) | OPINION |
| Respondent-Appellee. | ) | |
| | ) | |

Before: MOORE, KETHLEDGE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Elisha Jacobs, a federal prisoner proceeding through counsel, appeals the district court's denial of his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Jacobs' motion challenges his two convictions under 18 U.S.C. § 924(c), arguing that each predicate offense supporting those convictions can no longer be considered a "crime of violence" after the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *Davis*, however, nullified the residual clause definition of "crime of violence" in § 924(c)(3)(B) but did not invalidate the elements clause definition in § 924(c)(3)(A). Given that Jacobs' § 924(c) convictions remain valid under the elements clause, we affirm.

**I.**

We set forth a detailed factual background of this case when we decided Jacobs' direct appeal more than twenty years ago. *United States v. Jacobs*, 244 F.3d 503, 505-06 (6th Cir. 2001). Accordingly, we will incorporate by reference our earlier opinion and repeat only those background facts necessary for our discussion of the issues raised in Jacobs' current appeal.

In sum, Jacobs twice abducted his then-wife Lauretta in 1997 after she and her children moved from the couple's Kentucky home to Indiana. The first abduction occurred in February 1997 when Jacobs asked Lauretta to come to his parents' house in Kentucky to get some money for living expenses. Lauretta testified that when she arrived, Jacobs grabbed her, choked her, and hit her in the face, breaking three of her teeth and cutting her lip. Armed with a loaded shotgun and knife, Jacobs then forced Lauretta into his truck and made her drive to a motel in Tennessee. There, Lauretta had sex with Jacobs because she was afraid he would kill her if she refused. After Jacobs returned Lauretta to Kentucky the next day, she reported the abduction to police and went to a hospital to treat her injuries.

The second abduction occurred in April 1997, following Jacobs' arrest for kidnapping and aggravated assault and eventual release on bond. Undeterred by the release order restricting him from contacting Lauretta, Jacobs immediately drove to her Indiana trailer home. He then climbed through Lauretta's window at night brandishing a gun, and dragged her out of the trailer, across cornfields, and over a barbed wire fence, cutting her leg. Jacobs continued beating Lauretta and forced her into the woods where he became lost and eventually went to sleep. Lauretta was able to escape, and Jacobs was arrested and charged with several state felonies. He pled guilty in Indiana state court to criminal confinement and was sentenced to 15 years' imprisonment, concurrent with any sentence he received in federal court.

Jacobs was then charged in a federal indictment, tried, and convicted on the following seven counts related to the two abductions: (1) kidnapping, in violation of 18 U.S.C. § 1201; (2) interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2); (3) use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); (4) interstate violation of protection order, in violation of 18 U.S.C. § 2262; (5) interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(1); (6) unlawful possession of a firearm while under court order, in violation of 18 U.S.C. § 922(g)(8); and (7) use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The first four counts related to the Tennessee abduction and the remaining three counts related to the Indiana abduction. Jacobs received concurrent 70-month sentences for each of the non-§ 924(c) counts, a consecutive sentence of 60 months on the first § 924(c) count (Count 3), and an additional consecutive sentence of 240 months on the second § 924(c) count (Count 7).[1] This Court affirmed Jacobs' conviction and sentence on direct appeal. *Jacobs*, 244 F.3d at 508.

## II.

Twenty years later, Jacobs filed a motion under 28 U.S.C. § 2255 seeking to vacate his § 924(c) convictions in Counts 3 and 7 based on the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). For context, § 924(c) carries a mandatory consecutive prison sentence for anyone who "during and in relation to a crime of violence . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines the term "crime of violence" as a felony offense that:

---

[1] At the time of Jacobs' conviction, anyone convicted of multiple § 924(c) counts in the same indictment faced at least 5 years' imprisonment for the first violation and an additional 20-year consecutive sentence for the second violation. *Davis*, 139 S. Ct. at 2324 n.1 (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). Congress has since changed the law so that, now, a second § 924(c) violation triggers the 25-year minimum only if the first § 924(c) conviction has become final. *Id.* (citing Pub. L. 115-391, § 403(a), 132 Stat. 5221).

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). In 2019, *Davis* held that that the "residual clause" in § 924(c)(3)(B) is unconstitutionally vague, meaning that a § 924(c) conviction remains valid only if the underlying predicate offense qualifies as a "crime of violence" under the "elements clause" in § 924(c)(3)(A).[2] *See* 139 S. Ct. at 2336.

Relying on *Davis*, Jacobs claims that his § 924(c) convictions are invalid because the underlying predicate offenses supporting those convictions do not have "as an element the use, attempted use, or threatened use of physical force" to qualify as crimes of violence under the elements clause in § 924(c)(3)(A). The magistrate judge agreed and recommended that Jacobs' § 924(c) convictions be vacated, but the district court rejected that recommendation and denied Jacobs' motion. This appeal followed.

## III.

Section 2255 provides that a federal prisoner may move to vacate, set aside, or correct his sentence if, among other things, the sentence "was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). The petitioner in a § 2255 proceeding bears the burden of proof by a preponderance of the evidence. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020).

In reviewing a district court's denial of a § 2255 motion, we apply a clearly erroneous standard to its factual findings and review de novo its legal conclusions. *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000). One of the legal conclusions we review de novo is whether a

---

[2] We recently held that *Davis* applies retroactively to cases on collateral review. *In re Franklin*, 950 F.3d 909 (6th Cir. 2020).

crime constitutes a "crime of violence" under § 924(c). *United States v. Jackson*, 918 F.3d 467, 484 (6th Cir. 2019).

## IV.

The government argues as a threshold matter that we should automatically affirm because the district court judge, the same judge who oversaw Jacobs' trial and instructed the jury in 1999, asserted in his order denying Jacobs' § 2255 motion that "[i]t is clear from the jury instructions and the government's briefings that Jacobs was not convicted under the residual clause of § 924(c)." Based on this assertion, the government contends that Jacobs' motion is procedurally improper because *Davis* only applies retroactively to convictions or sentences that rely on the residual clause. While we would normally defer to the district court's assertion when analyzing a second or successive § 2255 petition, *see Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018), we have explicitly "rejected the Government's implied premise that a first-time § 2255 movant must show that the sentencing court relied *only* on the residual clause in order for the movant to bring a" *Davis*-like claim. *Chaney v. United States*, 917 F.3d 895, 899 (6th Cir. 2019). Thus, instead of relying solely on what the district court said in an opinion twenty years after Jacobs, a first-time § 2255 movant, was convicted, we believe the more appropriate procedure is to decide this case on the merits.

Here, the parties agree that the purported "crime of violence" underlying Jacobs' § 924(c) charge in Count 3 was interstate domestic violence under § 2261(a)(2), and the predicate for his § 924(c) charge in Count 7 was interstate domestic violence under § 2261(a)(1).[3] The issue on appeal is whether those predicate offenses still qualify as § 924(c) crimes of violence after *Davis*.

---

[3] The indictment charged that the underlying predicate offense in Count 7 was "interstate travel to violate a protection order," but the district court instructed the jury that the predicate for Count 7 was interstate domestic violence under § 2261(a)(1). These instructions may have resulted in a "constructive amendment" of the indictment, which normally is a reversible error. *See United*

It is well settled that we employ the "categorical approach" to determine whether Jacobs'

interstate domestic violence convictions each constitute a crime of violence under § 924(c)(3)'s

elements clause. *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016). The categorical

approach prohibits us from considering how an offender may have violated the statute in a

particular circumstance, and instead requires us to focus solely on the statutory definition (*i.e.*, the

elements) of the offense. *Id.* Based on the elements alone, we then determine whether "every

defendant convicted of that . . . felony *must have* used, attempted to use, or threatened to use

physical force against the person of another *in order to have been convicted*[.]"[4] *United States*

*v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019). If the answer to that question is "yes" because even

the least serious act criminalized by the statute involves physical force, then a conviction under

that statute is categorically a crime of violence under § 924(c). *See id.*

We take a slightly different approach for divisible statutes. A statute is considered

"divisible" if it "lists multiple elements disjunctively," as distinguished from a statute that merely

"enumerates various factual means of committing a single element." *Mathis v. United States*, 136

S.Ct. 2243, 2249 (2016); *see also Descamps v. United States*, 570 U.S. 254, 257 (2013) (a divisible

statute defines multiple separate crimes by "set[ting] out one or more elements of the offense in

the alternative"). For divisible statutes, we use a "modified categorical approach" if at least one

---

*States v. Kuehne*, 547 F.3d 667, 685 (6th Cir. 2008) (a constructive amendment occurs when the district court "charge[s] the jury on a separate offense that was not listed in [the] indictment"); *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). However, Jacobs did not object to the instruction in the district court or on appeal, and any effort to raise this non-*Davis* issue now would be untimely.

[4] We also apply the categorical approach in several other analogous situations, such as to determine which crimes fall within U.S.S.G. § 4B1.2(a)'s definition of "crime of violence" or the Armed Career Criminal Act's definition of "violent felony." *See United States v. Covington*, 738 F.3d 759, 762 (6th Cir. 2014). Accordingly, we may look to those cases, including *Burris*, for guidance even if they apply the categorical approach outside of the § 924(c) context.

of the defined crimes is categorically a "crime of violence" under § 924(c)'s elements clause, and at least one of the crimes is not. *Burris*, 912 F.3d at 393; *United States v. Mitchell*, 743 F.3d 1054, 1063 (6th Cir. 2014). The modified categorical approach is a tool that allows us to consider a "limited class of documents," including the underlying indictment and jury instructions, to identify which elements formed the basis of the defendant's conviction. *Burris*, 912 F.3d at 393 (quoting *Mathis*, 136 S.Ct. at 2249). If, after reviewing these documents, we can determine under which alternative crime the defendant was convicted, then we "do what the categorical approach demands" and evaluate whether that crime is categorically a crime of violence under § 924(c). *Id.*

## V.

We thus turn to the language of the relevant § 924(c) predicate offenses to decide whether those statutes are divisible. In 1997, the year Jacobs committed the offenses in this case, § 2261(a)(1) provided that:

> A person who travels across a State line . . . with the intent to injure, harass, or intimidate that person's spouse or intimate partner, and who, in the course of or as a result of such travel, intentionally commits a crime of violence and thereby causes bodily injury to such spouse or intimate partner, shall be punished as provided in subsection (b).

18 U.S.C. § 2261(a)(1) (1997). Section 2261(a)(2) further provided that:

> A person who causes a spouse or intimate partner to cross a State line . . . by force, coercion, duress, or fraud and, in the course or as a result of that conduct, intentionally commits a crime of violence and thereby causes bodily injury to the person's spouse or intimate partner, shall be punished as provided in subsection (b).

18 U.S.C. § 2261(a)(2) (1997). Subsection (b) listed the potential penalties for violating §§ 2261(a)(1) and (2), which ranged from up to five years' imprisonment to life depending on how badly the victim was injured. 18 U.S.C. § 2261(b) (1997).

We conclude, as did the district court, that neither § 2261(a)(1) nor § 2261(a)(2) are divisible statutes. Instead of listing "alternative elements," these statutes define only one crime

7

each—interstate domestic violence—and only one set of elements that constitute that crime. *See Descamps*, 570 U.S. at 277-78. For example, § 2261(a)(1) does not list separate offenses or impose different penalties depending on whether the defendant intends to "injure, harass, or intimidate" the victim, and § 2261(a)(2) does not differentiate between defendants who cause their victim to cross a state line by "force, coercion, duress, or fraud." Nor does the common phrase "intentionally commit[] a crime of violence" in both statutes mean that there are multiple alternative sets of *elements* for interstate domestic violence. Sure, the government must prove that the defendant committed the underlying crime of violence, but that does not mean that the elements of that predicate crime are themselves elements of either §§ 2261(a)(1) or (2). There are also various ways a defendant can satisfy the "crime of violence" element, but a statute is not divisible merely because it lists "multiple alternative factual *means* of committing a single element." *Burris*, 912 F.3d at 393 (citing *Mathis*, 136 S. Ct. at 2249). Together, these features of §§ 2261(a)(1) and (2) support the conclusion that the statutes are not divisible and therefore not amenable to the modified categorical approach. *See Mitchell*, 743 F.3d at 1063.

Although we are not bound by the views of our sister circuits, we acknowledge that the Fourth Circuit reached a different conclusion in *United States v. Faulls*, 821 F.3d 502 (4th Cir. 2016). There, the defendant, Faulls, argued that his § 2261(a)(2) conviction was not a "sex offense" that required him to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA")[5] because it was not a criminal offense that "has an element involving a sexual act or sexual contact with another[.]" *Id.* at 510. In determining whether interstate domestic violence under § 2261(a)(2) was categorically a sex offense under SORNA, the Fourth

---

[5] SORNA was originally codified starting at 42 U.S.C. § 16911 but has since moved to 34 U.S.C. § 20911.

Circuit held that the statute was divisible "because a defendant convicted of interstate domestic violence may have committed, for example, assault with a deadly weapon, murder, or sexual assault as the underlying crime of violence." *Id.* at 514 (citations omitted). It then applied the modified categorical approach, determined that Faulls' § 2261(a)(2) "crime of violence" was aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(2), and concluded that his conviction was categorically a sex offense under SORNA. *Id.* at 516.

We respectfully disagree with the Fourth Circuit's use of the modified categorical approach in *Faulls* because, for the reasons explained above, we do not find that §§ 2261(a)(1) or (2) are divisible statutes. More generally, we also highlight *Faulls* as an example of how a mechanical application of the categorical approach may sometimes lead to strange results. The Fourth Circuit knew that Faulls' "crime of violence" predicate for his § 2261(a)(2) conviction was aggravated sexual abuse, and aggravated sexual abuse is clearly a sex offense under SORNA. However, if the Fourth Circuit determined that § 2261(a)(2) was not divisible (a finding we would have made), then it would have been forced to employ the categorical approach and essentially ignore that Faulls engaged in conduct constituting aggravated sexual abuse. *Cradler v. United States*, 891 F.3d 659, 667 (6th Cir. 2018). This would have resulted in a finding that Faulls' interstate domestic violence conviction was not categorically a sex offense under SORNA, particularly given that the Fourth Circuit already determined that "a crime of violence is not *necessarily* a sex offense." *Faulls*, 821 F.3d at 513. To avoid reaching this potentially absurd result, the Fourth Circuit instead chose to align its holding with SORNA's legislative goal of protecting the public by "strengthen[ing] and increas[ing] the effectiveness of . . . sex offender registration and notification." *See Faulls*, 821 F.3d at 515 (citations omitted); *see also* The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38030 (July 2, 2008). This makes

9

sense as a practical matter and we understand why the Fourth Circuit, knowing what it knew, was tempted to consider the particular facts underlying Faulls' conviction. We just disagree that it was appropriate to do so. *See, e.g.*, *Descamps*, 570 U.S. at 260-65.

Given that §§ 2261(a)(1) and (2) are not divisible statutes, the next step in our analysis is to determine whether interstate domestic violence, as it existed in 1997, is categorically a "crime of violence" under § 924(c)'s elements clause. 18 U.S.C. § 924(c)(3)(A). "If the statute requires proving that someone used, attempted, or threatened to use physical force against another, it satisfies the elements clause even if the statute does not match the elements clause word for word." *United States v. Patterson*, 853 F.3d 298, 302 (6th Cir. 2017) (citation omitted). The phrase "physical force" in this context means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Rafidi*, 829 F.3d at 445 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

To establish a violation of §§ 2261(a)(1) or (2) in 1997, the government had to prove, among other things not relevant here, that the defendant "intentionally commit[ed] a crime of violence" that caused or resulted in "bodily injury."[6] Section 2261(a) does not define the term "crime of violence," so we look to the general definition found in § 16, which, in turn, contains the same elements clause and residual clause definitions as § 924(c)(3). *See* 18 U.S.C. § 16. Like in *Davis*, the Supreme Court in *Sessions v. Dimaya* held that § 16's residual clause was unconstitutionally vague and invalid. 138 S. Ct. 1204, 1215-16 (2018). Thus, today, a conviction under § 2261(a) would necessarily constitute a crime of violence under § 924(c)(3)(A) because it would require the defendant to have committed an underlying crime of violence under the identical

---

[6] In 2000, Congress amended §§ 2261(a)(1) and (2) to remove the explicit reference to "bodily injury." *See* Pub. L. 106-386, § 1107(a), 114 Stat. 1464 (2000).

elements clause in § 16(a). *See United States v. Kearney*, 837 F. App'x 975, 979 (4th Cir. 2020) (analyzing current version of § 2261(a)(1) and noting that common sense dictates that "a crime that requires the commission of a crime of violence in every case must necessarily itself be a crime of violence"). Was the same true in 1997?

Applying the categorical approach, we answer this question by first identifying the least culpable conduct necessary for a conviction of interstate domestic violence in 1997. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). The Supreme Court instructs that "our focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply 'legal imagination' to the . . . offense; there must be 'a realistic probability, not a theoretical possibility,' that the" statute would be used to criminalize that conduct. *Id.* at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Once we have determined the realistic least culpable conduct, we then consider whether that conduct amounts to a crime of violence under § 924(c)(3)(A), such that every defendant who committed interstate domestic violence in 1997 must have used, attempted to use, or threatened to use physical force against the person of another in order to have been convicted. *See Burris*, 912 F.3d at 392.

Jacobs argues that the district court erred because it skipped this initial step and failed to identify the least culpable conduct that could violate §§ 2261(a)(1) or (2). Buried in a footnote in his reply brief, Jacobs proposes that the least culpable conduct criminalized by these statutes at the time of his convictions "included situations where bodily injury was caused by a residual clause crime of violence like kidnapping, without any use of force." This hypothetical situation where someone could *theoretically* violate the 1997 versions of §§ 2261(a)(1) or (2)—which again require that the defendant "intentionally commit[] a crime of violence" that causes or results in "bodily injury"—warrants further scrutiny.

11

Imagine a defendant who either travels across a state line with the intent to harass his spouse (§ 2261(a)(1)), or causes his spouse to cross a state line by fraud (§ 2261(a)(2)), and, in the course of that conduct, intentionally commits federal kidnapping, in violation of § 1201(a). So far, this conduct would not qualify as a § 924(c) predicate because harassment or fraud do not necessarily involve the use, attempted use, or threatened use of force, and we have already held that federal kidnapping is not a crime of violence for purposes of § 924(c) after *Davis*. *See Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019). Recall that both statutes also require the defendant to cause "bodily injury," which is defined in § 2266 as "any act, except one done in self-defense, that results in physical injury *or sexual abuse*." 18 U.S.C. § 2266 (1997) (emphasis added). Physical injury must involve force, *United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015), but what about sexual abuse? Under § 2242, a person commits sexual abuse when he knowingly "causes another person to engage in a sexual act by threatening or placing that other person in fear" or engaging in a sexual act with someone who is mentally or physically incompetent. 18 U.S.C. § 2242. Therefore, a defendant *could* "intentionally commit[] a crime of violence" that causes "bodily injury" by kidnapping and engaging in sexual acts with someone who is physically incompetent.

It is telling that Jacobs waited until his reply brief to propose a hypothetical scenario where §§ 2261(a)(1) or (2) "could be applied to conduct that does not constitute a crime of violence" because such a scenario is merely "a theoretical possibility," not "a realistic probability." *Duenas-Alvarez*, 549 U.S. at 193. The Supreme Court has instructed us that the "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense." *Moncrieffe*, 569 U.S. at 191 (quoting *Duenas-Alvarez*, 549 U.S. at 193)). Thus, to show that a particular application of a statute is realistic, the defendant "must at least point to

his own case or other cases in which . . . courts in fact did apply the statute in the . . . manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

Critically, Jacobs has not cited any cases (and we are not aware of any) where the interstate domestic violence statutes were ever used to criminalize a nonviolent crime that resulted in sexual abuse without physical injury. This comes as no surprise given that Congress enacted the Violence Against Women Act and criminalized interstate domestic violence in 1994 as a response to the "escalating problem of *violence* against women." *See United States v. Page*, 167 F.3d 325, 326 (6th Cir. 1999) (Moore, J., concurring) (emphasis added). Without pointing to a single case applying §§ 2261(a)(1) or (2) to non-violent conduct, Jacobs has not established that there is a "realistic probability" that someone would be convicted of interstate domestic violence without using physical force, as that term is used in § 924(c).[7] *Duenas-Alvarez*, 549 U.S. at 193; *Moncrieffe*, 569 U.S. at 191. For these reasons, Jacobs' hypothetical scenario above merely reflects legal imagination and does not prevent a finding that interstate domestic violence is categorically a crime of violence for purposes of § 924(c)(3)(A).[8]

---

[7] Thanks to one of Jacobs' district court briefs, we are aware of at least one district court case setting aside, rather than upholding, a § 2255 petitioner's interstate domestic violence conviction because the underlying predicate offense, federal kidnapping, was not categorically a crime of violence under § 16. *Bailey v. United States*, No. 2:16-cv-06190, 2019 WL 4058599, at *5 (S.D. W. Va. Aug. 28, 2019). This case further supports our conclusion that a defendant must have used physical force to be convicted of interstate domestic violence.

[8] For these same reasons, even if we had decided that §§ 2261(a)(1) and (2) were divisible statutes (which they are not), it would still be inappropriate for us to use the modified categorical approach in this case. "A divisible statute is necessary but not sufficient for application of the modified categorical approach." *Mitchell*, 743 F.3d at 1063. There must also be ambiguity in the statute, which, for purposes of § 924(c), results when an individual can violate the statute of conviction in a way that constitutes a crime of violence and in a way that does not. *See id.* (citing *United States v. Johnson*, 707 F.3d 655, 659 (2013)). Finding no ambiguity here, we are required to apply the categorical approach.

Jacobs' fallback argument is that it is "impossible" for us to apply the categorical approach in this case (and therefore his § 924(c) convictions fail) because the government never proved, much less identified, the underlying crimes of violence supporting his interstate domestic violence convictions in Counts 2 and 5. He further contends that without knowing what those specific § 2261(a) predicates were, we cannot determine whether every defendant convicted of *those predicates* categorically must have used, attempted to use, or threatened to use physical force against another. We disagree.

We understand that the government may have failed to identify or prove the underlying criminal offenses supporting Jacobs' § 2261(a) convictions in Counts 2 and 5. We say *may* because the indictment does provide that the underlying crime of violence for Jacobs' § 2261(a)(2) charge in Count 2 was "assault and rape," and the government, during closing argument, identified that the crime of violence for Jacobs' § 2261(a)(1) charge in Count 5 was "assault with a deadly weapon." Of course, neither the indictment nor the government's closing argument are evidence, but they do shed light on what the jury may have considered in reaching the verdict.

We must keep in mind, however, the scope of Jacobs' appeal, which is whether his § 924(c) convictions in Counts 3 and 7 remain valid after the Supreme Court's decision in *Davis*. We are not deciding whether the government sufficiently proved Jacobs' interstate domestic violence convictions in Counts 2 and 5, or even whether the indictment identified the correct § 924(c) predicate in Count 7. For our purposes, the categorical approach is relevant only to determine whether every interstate domestic violence conviction must have necessarily involved force to constitute a crime of violence under § 924(c), not whether the secondary predicate offenses must have categorically involved force to constitute a crime of violence under § 2261(a)(1) or (2).

14

Accordingly, we disagree with Jacobs that it is impossible to apply the categorical approach in this case.

Moreover, to the extent Jacobs now attacks his convictions on non-*Davis* grounds, his arguments are improper and untimely. A § 2255 motion "is not a substitute for a direct appeal," and thus a defendant seeking "to obtain collateral review relief . . . must clear a significantly higher hurdle than would exist on direct appeal." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 166-68 (1982)). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Jacobs has not met this heavy burden because he has not even argued that he is innocent or that he had cause, let alone excusable cause, for failing to raise these claims until now. Therefore, Jacobs' sufficiency-of-the-evidence arguments are procedurally defaulted.

In sum, we agree with the district court that every realistic defendant convicted of interstate domestic violence under the 1997 versions of §§ 2261(a)(1) or (2) "must have used, attempted to use, or threatened to use physical force against the person of another in order to have been convicted[.]" *Burris*, 912 F.3d at 392. Therefore, Jacobs' convictions under both §§ 2261(a)(1) and (2) are categorically crimes of violence under the elements clause definition of "crime of violence" in § 924(c)(3)(A), and his § 924(c) convictions are still valid post-*Davis*. Jacobs' arguments to the contrary are without merit.

## VI.

For the foregoing reasons, the district court's order denying Jacobs' § 2255 motion is **AFFIRMED**.